**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG LITIGATION | ) ) | MDL Docket No. |

**MEMORANDUM IN SUPPORT OF MOTION FOR TRANSFER OF RELATED ACTIONS TO THE DISTRICT OF MINNESOTA PURSUANT TO 28 U.S.C. § 1407 <u>FOR COORDINATED PRETRIAL PROCEEDINGS</u>**

Pursuant to Rule 6.2(a) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, John Ciaccio, plaintiff in *Ciaccio v. 3M Company, et al.*, Case No. 0:19-cv-00179 (D. Minn.) (the "Ciaccio Action"), respectfully submits this Memorandum in Support of the Motion for Transfer of Related Actions to the District of Minnesota for coordinated pretrial proceedings under 28 U.S.C. § 1407. Transfer and coordination will promote the just and efficient conduct" of the actions, 28 U.S.C. § 1407, because the Related Actions, of which there are currently seven, each allege overlapping causes of action related to the same product defect causing the same or similar injuries. Of the three venues in which the Related Actions are presently filed, transfer and coordination in the District of Minnesota is most appropriate because the Defendants have their principal places of business there and thus the relevant documents and witnesses are located there. Minnesota is thus not just an experienced MDL venue, but is the venue most appropriate "for the convenience of the parties and witnesses."

INTRODUCTION

Plaintiff John Ciaccio ("Plaintiff") filed suit against 3M Company ("3M") and Aearo Technologies, LLC ("Aearo") in the District of Minnesota on January 24, 2019. Plaintiff alleges, among other things, that Defendants manufactured and sold dual-ended Combat Arms™ earplugs that were defective. Moreover, Plaintiff alleges Defendants knew the earplugs were defective prior to selling them because they falsified test results to qualify for a multi-million dollar per-year contract with the United States. As a result of the defect, Plaintiff now suffers from hearing loss and tinnitus.

To date, eight related actions have been filed in four judicial districts: *Kennedy v. 3M Company*, Case No. 5:19-cv-00128-JAK-SP (C.D. Cal., filed Dec. 24, 2018)[1]; *Bridges v. 3M Company*, Case No. 2:19-cv-00327 (N.D. Cal., filed Jan. 15, 2019); *Werner v. 3M Company*, Case No. 5:19-cv-00059-D (W.D. Okla., filed Jan. 18, 2019); *Stine v. 3M Company*, Case No. 5:19-cv-00058-HE (W.D. Okla., filed Jan. 18, 2019); *Rowe v. 3M Company*, Case No. 6:19-cv-00019-ADA-JCM (W.D. Tex., filed Jan. 22, 2019); *Ciaccio v. 3M Company, et al.*, Case No. 0:19-cv-00179 (D. Minn.); *Peek, et al. v. 3M Company, et al.*, Case No. 0:19-cv-00192 (D. Minn., filed Jan. 25, 2019); and *Larkin v. 3M Company, et al.*, Case No. 19-cv-00194 (D. Minn., filed Jan. 25, 2019) (collectively, "Related Actions").[2]

---

[1] This matter was removed from the Superior Court of the State of California for the County of San Bernardino on January 24, 2019.

[2] Pursuant to Rule 6.1(b)(ii) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, attached hereto is a Schedule of Related Actions.

2

The Related Actions assert similar claims on behalf of U.S. military personnel and other wearers of defective Combat Arms™ earplugs who suffered hearing loss and/or tinnitus, among other injuries, as a result of these defective earplugs. Each of these cases will involve the same or similar legal issues, claims, and expert witnesses.

Based on Movant's Counsel's research, and given that the U.S. military purchased enough Combat Arms™ earplugs to provide one pair to all military personnel deployed each year in major foreign engagements from 2003 through 2015, Movant reasonably anticipates that thousands of other actions with similar allegations are likely to follow. As discussed below, the District of Minnesota is the most appropriate forum for centralization of pretrial proceedings under 28 U.S.C. § 1407 because it is an experienced, and centrally located, jurisdiction in which Defendants' headquarters and the relevant documents and witnesses are located.

**ARGUMENT**

**I. Transfer and Coordination of the Related Actions Is Appropriate**

Under 28 U.S.C. §1407(a), civil actions pending in different district courts and involving "one or more common questions of fact" may be "transferred to any district for coordinated or consolidated pretrial proceedings." Transfer is appropriate to serve "the convenience of parties and witnesses" and to "promote the just and efficient conduct" of the pending actions. *Id*. Here, these factors support transferring the Related Actions to the District of Minnesota for coordinated pretrial proceedings.

**A. The Related Actions Involve Common Questions of Fact.**

The Related Actions share many common questions of fact that provide a sufficient basis for centralizing the actions in a single forum. Common questions of fact exist where two or more complaints assert similar allegations against similar defendants based on similar transactions and events. *See, e.g., In re UnumProvident Corp. Secs., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003) (centralization appropriate where "all actions [could] be expected to focus on a significant number of common events, defendants, and/or witnesses" and "core factual allegations" were consistent among the actions).

The individual complaints in the Related Actions involve overlapping causes of action that give rise to questions of fact about the same product defect and Defendants' knowledge thereof, that are not merely common, but virtually identical. The Related Actions all allege that Defendants knowingly sold defective Combat Arms™ earplugs to the U.S. military causing military personnel to suffer hearing loss and tinnitus. *See, e.g., In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 148 F. Supp. 3d 1383, 1385 (J.P.M.L. 2015) (transfer under § 1407 appropriate where related actions shared factual issues related to allegations of injuries from defective warming system). Centralizing the Related Actions will thus allow for coordinated discovery efforts aimed at the product defect and Defendants' knowledge thereof, as well as coordinated motion practice related to any defenses Defendants may raise that will largely be generally applicable to all cases.

Specifically, the Related Actions allege that the edge of the third flange of the non-inserted end of the Combat Arms™ earplugs presses against the ear canals of some wearers, causing it to fold back to its original shape and loosen the seal in the ear canal. *See, e.g., In re Bair Hugger*, 148 F. Supp. 3d at 1385 (common factual issues existed where plaintiffs alleged same defective condition of same product); *In re: Stryker Rejuvenate and ABG II Hip Implant Prods. Liab. Litig.*, 949 F. Supp. 2d 1378, 1379 (transfer to District of Minnesota under § 1407 appropriate due to shared factual questions "concerning design, manufacture, marketing and performance…" of the Stryker product); *In re Stryker Orthopaedics LFIT V40 Femoral Head Prod. Liab. Litig.*, 249 F. Supp. 3d 1353, 1355 (J.P.M.L. 2017) ("[a]ll actions involve common factual questions about alleged defects in HOC's Stryker-branded LFIT Anatomic CoCr V40 femoral heads").

Common questions of fact and law at issue in the Related Actions include, *inter alia*:

1. Whether Defendants' Combat Arms™ earplugs had a dangerous design defect;
2. Whether Defendants knew the Combat Arms™ earplugs were defective;
3. Whether Defendants represented that the Combat Arms™ earplugs would meet specific performance criteria established by the U.S. Government as a perquisite for bidding Indefinite-Quantity Contracts ("IQC") for earplugs;
4. Whether Defendants knew the performance representations were false;
5. Whether Defendants adequately instructed wearers of Combat Arms™ earplugs; and
6. Whether Defendants' misrepresentations about the benefits and protections provided by Combat Arms™ earplugs caused Plaintiff and other wearers to suffer hearing loss and tinnitus.

These substantially overlapping factual allegations and legal issues present common issues concerning the design, testing, sale, and marketing of the Combat Arms™ earplugs are sufficient to merit transfer and coordination. *See In re: Darvocet, Darvon and Propoxyphene Prod. Liab. Litig.*, 780 F. Supp. 2d 1379, 1380 (J.P.M.L. 2011) (transfer appropriate where common factual issues as to whether products "defectively designed and marketed…whether defendants knew or should have known about the increase risk…and failed to provide adequate warnings of them"); *In re Mirapex Prod. Liab. Litig.*, 493 F. Supp. 2d 1376, 1377 (J.P.M.L. 2007) (common factual questions warranting transfer in actions regarding alleged side effects and inadequate warnings); *In re: Cook Medical, Inc., IVC Filters Mktg., Sales Pract. and Prod. Liab. Litig.*, 53 F. Supp. 3d 1379, 1380 (J.P.M.L. 2014) (transfer under § 1407 appropriate where related acts "share paramount issues concerning the design, manufacture, testing, and marketing of a single medical device…") (citation omitted); *In re Baycol Prods. Liab. Litig.*, 180 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001) (common questions of fact exist where Related Actions shared allegations about product safety).

**B.  Transfer Will Promote the Just and Efficient Conduct of the Related Actions.**

Because the same conduct of Defendants regarding the same product and the same defect are at issue, and the plaintiffs in the Related Actions pursue the same or similar legal theories regarding the alleged defective product, centralizing these actions will promote the just and efficient conduct of the Related Actions. Transfer and consolidation

will eliminate duplication in discovery and discovery rulings, avoid conflicting rulings on the merits, avoid conflicting schedules, reduce litigation costs, and save time and effort of the parties, the attorneys, the witnesses, and the courts. *See Manual for Complex Litigation*, § 20.131 (4th ed. 2016).

As an initial matter, the plaintiffs will seek to develop similar evidence, including evidence of Defendants' knowledge of the defect, testing, and representations and warranties accompanying the earplugs. Absent centralization, plaintiffs in each individual action may be required to seek discovery regarding the background science of the Combat Arms™ earplugs, testing of the earplugs, and Defendants' performance representations. Centralizing the Related Actions for pretrial proceedings will eliminate duplicative discovery on these common issues. *See In re: Fluoroquinolone Prod. Liab. Litig.*, 122 F. Supp. 3d 1378, 1380 (J.P.M.L. 2015) (finding where issues of "general causation, the background science, regulatory history, and labeling will be common to all action" centralization will "…facilitate the establishment of a uniform pretrial approach"); *see also In re Darvocet*, 780 F. Supp. 2d at 1380-81 ("Centralization would help limit duplicative discovery, prevent inconsistent pretrial rulings on discovery and other issues, and conserve the resources of the parties, their counsel and particularly the judiciary.").

Centralization will also permit the transferee judge to establish a uniform pretrial approach to conserve judicial and party resources to reduce duplicative fact discovery and reducing "potentially costly expert discovery." *See In re: Fluoroquinolone*, 122 F. Supp.

7

3d at 1380. Centralization will also avoid the necessity for multiple and potentially inconsistent rulings on *Daubert* motions in this action involving questions of the performance and testing of Combat Arms™ earplugs. *See In re Bair Hugger*, 148 F. Supp. 3d at 1385; *In re Stryker Orthopaedics*, 249 F. Supp. 3d at 1355 (centralization avoids duplicative discovery on "complex issues such as the design, testing, manufacturing, and marketing" in products liability action).

Further, product liability mass torts are frequently centralized where plaintiffs allege a common defect. *See, e.g., In re: Cook Medical*, 53 F. Supp. 3d at 1381 (citing cases granting centralization where "plaintiffs allege a common defect" against the same manufacturer); *see also, e.g., In re: Fluoroquinolone*, 122 F. Supp. 3d at 1380 ("Issues concerning general causation, the background science, regulatory history, and labeling will be common to all actions. Centralization will reduce potentially costly expert discovery, facilitate the establishment of a uniform pretrial approach to these cases, reduce the potential for inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary.").

Thus, where, as here, transfer to a single court will avoid duplicative discovery and potentially conflicting pretrial and other rulings, transfer for pretrial purposes is warranted to promote the interest of judicial economy and efficiency.

**II. The District of Minnesota Is the Most Appropriate Transferee Forum**

Under 28 U.S.C. § 1407(a), transfer is needed to serve "the convenience of the parties and witnesses" and to "promote the just and efficient conduct" of the Related Actions. *Id*. The District of Minnesota is the most appropriate forum for the Related Actions because (A) it is the forum with the most meaningful nexus to the Related Actions; (B) it has proven itself to have the judicial resources and expertise to efficiently manage an MDL like this one; and (C) the convenience of the parties and witnesses is best served there.

**A. This Litigation Has a Strong Nexus to the District of Minnesota.**

The Panel looks to the "nexus" between the allegations and the proposed forum when determining an appropriate transferee district. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 403 F. Supp. 2d 1358, 1360 (J.P.M.L. 2005). A nexus may exist where the alleged wrongful conduct occurred and where the documents and witnesses are located. *See, e.g., In re: Darvocet*, 780 F. Supp.2d at 1382 (transferring actions to district in which defendant headquartered are where "relevant documents and witnesses are likely located…") (citation omitted).

Here, the allegations stem from Defendants' design and sale of defective Combat Arms™ earplugs, including manipulating the testing protocol after identifying the design defect. Both Defendants' principal places of business are in Minnesota.[3]

---

[3] Aearo Technologies developed, marketed, and sold the Combat Arms™ earplug until being acquired by 3M in 2008. 3M acquired both the assets and liabilities of Aearo and hired Aearo's employees and maintained it as a separate operating unit.

Defendants' employees and thus their documents related to the relevant decisions are in Minnesota. *See In re Bair Hugger*, 148 F. Supp. 3d at 1386 (transferring action involving 3M to the District of Minnesota where "many witnesses and relevant documents are likely to be found"); *In re Tylenol (Acetaminophen) Mktg., Sales Pract. and Prods. Liab. Litig.*, 936 F. Supp. 2d 1379, 1380 (J.P.M.L. 2013) (transferring to district in which company responsible for "design, manufacture, and distribution" of product at issue was located as "many of defendants' witnesses and documents are likely to be found in or near"); *In re Toyota Motor Corp. Unintended Acceleration Mktg. & Sales Pract. Prods. Liab. Litig.*, 704 F. Supp. 2d 1379, 1382 (J.P.M.L. 2010) (Central District of California appropriate transferee district because "Toyota maintains its United States corporate headquarters within this district, and relevant documents and witnesses are likely located there"); *In re: Lead Contaminated Fruit Juice Prod. Mktg. and Sales Pract. Litig.*, 777 F. Supp. 2d 1353, 1355 (J.P.M.L. 2011) ("this district is the most conveniently located to the headquarters of the various defendants and therefore, the location of relevant documents and witnesses").

The evidence related to Defendants' alleged actions will emanate from Minnesota where Defendants made executive decisions. Moreover, absent transfer, judges in the different districts where Related Actions are or will be pending must separately oversee duplicative discovery, as well as consider and make rulings on the same or similar pretrial issues and motions. Such duplicative efforts are both a waste of judicial and party resources and present the risk of inconsistent pretrial rulings.

**B. The District of Minnesota Has the Judicial Resources and Expertise to Efficiently Manage the Related Actions.**

The Panel weighs the experience and ability of the forum in managing complex multidistrict litigation in selecting the appropriate transferee district, and then takes into account the number of pending MDLs in transferring cases for coordinated pretrial proceedings. *See, e.g., In re Baycol*, 180 F. Supp. 2d at 1380 (transferring to the District of Minnesota as "i) centrally located, ii) is not currently overtaxed with other multidistrict dockets, and iii) possesses the necessary resources, facilities, and technology to sure-handedly devote the substantial time and effort to pretrial matters that this complex docket is likely to require"). The District of Minnesota has served as a transferee forum for many MDLs over the years. Judges in the District of Minnesota possess deep experience in overseeing complex litigation, in particular products liability actions. Indeed, of the ten MDL matters pending there, five are products liability actions. *See In re: Baycol Prods. Liab. Litig.*, MDL No. 1431; *In re: Mirapex Prods. Liab. Litig.*, MDL No. 1836; *In re: Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, MDL No. 2666; *In Re: Stryker Rejuvenate and ABG II Hip Implant Prods. Liab. Litig.*, MDL No. 2441; *In re: Fluoroquinolone Prods. Liab. Litig.*, MDL No. 2642.

**C. The District of Minnesota is the Most Convenient Forum for the Parties and Witnesses.**

Convenience of the parties and witnesses is another important factor considered by the Panel in selecting a transferee forum. *See generally* 28 U.S.C. § 1407(a). Closely related

to the nexus described above, here, Defendants' headquarters are a short drive from the District of Minnesota's St. Paul and Minneapolis Courthouses.[4] Its corporate representatives and other decision-makers most likely to be the subject of discovery reside in the Minneapolis/St. Paul area. *See In re Darvocet*, 780 F. Supp. 2d at 1382 ("Relevant documents and witnesses likely are located within the Eastern District of Kentucky at defendant Xanodyne's Newport headquarters") (citation omitted); *In re: Cook Medical*, 53 F. Supp. 3d at 1381 (transferring to district in which defendant Cook headquartered and "where relevant documents and witnesses are likely to be found").

For the plaintiffs in the Related Actions, the majority do not reside in the district in which the case was filed. Specifically, although filed in the Western District of Oklahoma, Plaintiff Werner lives in Hawaii and Plaintiff Stine lives in Florida; their respective actions were filed in the Western District of Oklahoma. Similarly, Plaintiff Bridges' action was filed in the Northern District of California although he resides in Washington, D.C.[5] Movant and plaintiffs in the Related Actions are geographically dispersed across the country as U.S. military personnel and other wearers of 3M's defective Combat Arms™

---

[4] Specifically, 3M identifies its corporate headquarters as located at 3M Corporate Headquarters, 3M Center, St. Paul, Minnesota 55144.
*See https://www.3m.com/3M/en_US/company-us/about-3m/* (last accessed Jan. 24, 2019). The approximate drive time from this location is between 15-25 minutes to either the St. Paul or Minneapolis Courthouse, respectively.

[5] The lone exception is Plaintiff Kennedy, a resident of Riverside County, California, whose action was originally filed in San Bernardino County, California before it was removed to the Central District of California.

earplugs. Thus, the District of Minnesota, as the principal place of business and headquarters of Defendants is the most convenient forum. *See In re: Fluoroquinolone Prods. Liab. Litig.*, 122 F. Supp.3d at 1381 (transferring to the District of Minnesota as it "provides a geographically central and convenient forum for this nationwide litigation").

## CONCLUSION

For the reasons set forth above, Movant respectfully requests that the Panel transfer the Related Actions, as well as any tag-along actions that are subsequently filed asserting related or similar claims, in the District of Minnesota.

Dated: January 25, 2019                               Respectfully submitted,

| | |
|---|---|
| William R. Sieben | By: /s/*Richard M. Paul III* |
| Alicia N. Sieben | Richard M. Paul III |
| Matthew J. Barber | Ashlea Schwarz |
| **SCHWEBEL GOETZ & SIEBEN, P.A** | Laura C. Fellows |
| 5120 IDS Center | **PAUL LLP** |
| 80 South Eighth Street | 601 Walnut Street, Suite 300 |
| Minneapolis, Minnesota 55402-2246 | Kansas City, Missouri 64106 |
| Tel:  612-377-7777 | Tel:  816-984-8100 |
| bsieben@schwebel.com | Rick@PaulLLP.com |
| asieben@schwebel.com | Ashlea@PaulLLP.com |
| mbarber@schwebel.com | Laura@PaulLLP.com |

**Attorneys for Movant John Ciaccio**