ACCO,(SPx),DISCOVERY,MANADR,RELATED-P

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Eastern Division - Riverside)
### CIVIL DOCKET FOR CASE #: 5:19-cv-00128-JAK-SP

Robin Kennedy v. 3M Company, et al
Assigned to: Judge John A. Kronstadt
Referred to: Magistrate Judge Sheri Pym
Case in other court: San Bernardino Superior Court,
                     CIVDS1833456
Cause: 28:1441 Notice of Removal - Product Liability

Date Filed: 01/23/2019
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**Robin Kennedy**                    represented by   **Lee A Cirsch**
                                                      Lanier Law Firm PC
                                                      21550 Oxnard Street 3rd Floor
                                                      Woodland Hills, CA 91367
                                                      310-277-5100
                                                      Fax: 310-277-5103
                                                      Email: lee.cirsch@lanierlawfirm.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Michael A Akselrud**
                                                      Lanier Law Firm PC
                                                      21550 Oxnard Street 3rd Floor
                                                      Woodland Hills, CA 91367
                                                      310-277-5100
                                                      Fax: 310-277-5103
                                                      Email:
                                                      michael.akselrud@lanierlawfirm.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**3M Company**                       represented by   **Kimberly O Branscome**
                                                      Kirkland and Ellis LLP
                                                      333 South Hope Street
                                                      Los Angeles, CA 90071
                                                      213-680-8400
                                                      Fax: 213-680-8500
                                                      Email:
                                                      kimberly.branscome@kirkland.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sierra Elizabeth**
Kirkland and Ellis LLP
333 South Hope Street
Los Angeles, CA 90071
213-680-8400
Fax: 213-680-8500
Email: sierra.elizabeth@kirkland.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Does**
*One through Fifty, inclusive*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/23/2019 | 1 | NOTICE OF REMOVAL from San Bernardino, case number CIVDS1833456 Receipt No: 0973-23085525 - Fee: $400, filed by Defendant 3M Company. (Attachments: # 1 Exhibit A - State Court Complaint, # 2 Exhibit B - Summons, # 3 Exhibit C - State Court Civil Cover Sheet, # 4 Exhibit D - Certificate of Assignment, # 5 Exhibit E - Notice of Trial Setting Conference, # 6 Exhibit F - Complaint: Andrew Bridges v. 3M Company, Case No. 2:19-cv-00327-JFW-AS, C.D. Cal.) (Attorney Kimberly O Branscome added to party 3M Company (pty:dft))(Branscome, Kimberly) (Entered: 01/23/2019) |
| 01/23/2019 | 2 | CIVIL COVER SHEET filed by Defendant 3M Company. (Branscome, Kimberly) (Entered: 01/23/2019) |
| 01/23/2019 | 3 | NOTICE Defendant 3M Company's Notice of Pendency of Other Actions Pursuant to L.R. 83-1.4.1 filed by Defendant 3M Company. (Branscome, Kimberly) (Entered: 01/23/2019) |
| 01/23/2019 | 4 | *Defendant 3M Company's Certification of Interested Parties Pursuant to Local Rule 7-1.1 and Corporate Disclosure Statement Pursuant to Federal Rule of Civil Procedure 7.1* CERTIFICATE of Interested Parties filed by Defendant 3M Company, identifying None. (Branscome, Kimberly) (Entered: 01/23/2019) |
| 01/23/2019 | 5 | NOTICE of Related Case(s) filed by Defendant 3M Company. Related Case(s): 2:19-cv-00327-JFW-AS (Branscome, Kimberly) (Entered: 01/23/2019) |
| 01/23/2019 | 6 | Notice of Appearance or Withdrawal of Counsel: for attorney Kimberly O Branscome counsel for Defendant 3M Company. Adding Kimberly Branscome as counsel of record for 3M Company for the reason indicated in the G-123 Notice. Filed by Defendant 3M Company. (Branscome, Kimberly) (Entered: 01/23/2019) |
| 01/23/2019 | 7 | Notice of Appearance or Withdrawal of Counsel: for attorney Sierra Elizabeth counsel for Defendant 3M Company. Adding Sierra Elizabeth as counsel of record for 3M Company for the reason indicated in the G-123 Notice. Filed by |

| | | |
|---|---|---|
| | | Defendant 3M Company. (Attorney Sierra Elizabeth added to party 3M Company(pty:dft))(Elizabeth, Sierra) (Entered: 01/23/2019) |
| 01/23/2019 | 8 | PROOF OF SERVICE filed by Defendant 3M Company, re Civil Cover Sheet (CV-71) 2 , Notice of Appearance or Withdrawal of Counsel (G-123), 6 , Certificate/Notice of Interested Parties, 4 , Notice (Other) 3 , Notice of Removal (Attorney Civil Case Opening),, 1 , Notice of Related Case(s) 5 , Notice of Appearance or Withdrawal of Counsel (G-123), 7 served on 01/23/2019. (Branscome, Kimberly) (Entered: 01/23/2019) |
| 01/23/2019 | | CONFORMED COPY OF COMPLAINT against defendants 3M Company, Does One through Fifty, inclusive, Jury Demand, filed by plaintiff Robin Kennedy. (Filed in state court 12/24/18, submitted as document 1, attachment 1) (esa) (Entered: 01/23/2019) |
| 01/23/2019 | 9 | NOTICE OF ASSIGNMENT of Eastern Division Removal Case. This case was initially assigned to District Judge Jesus G. Bernal and referred to Magistrate Judge Sheri Pym for discovery. Pursuant to General Order 16-05, this case has been randomly reassigned to District Judge John A. Kronstadt. The case number on all documents filed with the Court in this case should read as follows: 5:19-cv-00128 JAK (SPx). (esa) (Entered: 01/23/2019) |
| 01/23/2019 | 10 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (esa) (Entered: 01/23/2019) |
| 01/23/2019 | 11 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney W. Mark Lanier. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (esa) (Entered: 01/23/2019) |
| 01/23/2019 | 12 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Richard Meadow. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (esa) (Entered: 01/23/2019) |
| 01/23/2019 | 13 | |

| | | |
|---|---|---|
| | | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Rachel Lanier. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (esa) (Entered: 01/23/2019) |
| 01/23/2019 | 14 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Evan D. Buxner. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (esa) (Entered: 01/23/2019) |
| 01/23/2019 | 15 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney D. Todd Mathews. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (esa) (Entered: 01/23/2019) |
| 01/23/2019 | 16 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Megan Arvola. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the |

docket until your Pro Hac Vice status has been resolved. (esa) (Entered: 01/23/2019)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/24/2019 14:16:19 | | | |
| **PACER Login:** | lcfellows:5389986:4634266 | **Client Code:** | 3M |
| **Description:** | Docket Report | **Search Criteria:** | 5:19-cv-00128-JAK-SP End date: 1/24/2019 |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

1  Kimberly Branscome (SBN 255480)
   kimberly.branscome@kirkland.com
2  Sierra Elizabeth (SBN 268133)
   sierra.elizabeth@kirkland.com
3  KIRKLAND & ELLIS LLP
   333 South Hope Street
4  Los Angeles, California 90071
   Telephone:  (213) 680-8400
5  Facsimile:  (213) 680-8500

6  Attorneys for Defendant 3M COMPANY

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 ROBIN KENNEDY,                    )  CASE NO. 5:19-cv-00128
                                     )
12          Plaintiff,               )
                                     )  **DEFENDANT 3M COMPANY'S**
13      v.                           )  **NOTICE OF REMOVAL**
                                     )
14 3M COMPANY, and DOES, ONE         )  Complaint Filed: December 24, 2018
   Through FIFTY, inclusive,         )  Date Removed:    January 23, 2019
15                                   )  Trial Date:      None Set
          Defendants.               )
16                                   )
                                     )
17                                   )

18

19

20

21

22

23

24

25

26

27

28

Defendant 3M COMPANY ("Defendant") by and through its counsel, hereby gives notice of the removal of this action from the Superior Court of the State of California for the County of San Bernardino to the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446, based on the following facts. Defendant expressly reserves all rights otherwise to respond to this lawsuit, including but not limited to any objection to jurisdiction or improper venue.

Pursuant to 28 U.S.C. § 1446(a), Defendant has attached to this Notice a copy of all process, pleadings and orders that Defendant has obtained from the Superior Court's file.

## **BACKGROUND**

1. On December 24, 2018, an action was filed in the Superior Court of the State of California, in the County of San Bernardino, entitled *Robin Kennedy v. 3M Company, and DOES, ONE Through Fifty, Inclusive*, designated as case number CIVDS1833456.

2. Plaintiff in this action Robin Kennedy ("Plaintiff") was at the time of the filing of the Complaint, and still is, a citizen and resident of California. (Ex. A (Compl.) ¶ 2.)

3. Plaintiff alleges personal injuries sustained while in training and/or on active military duty domestically and abroad. Specifically, Plaintiff alleges that he suffered serious and dangerous side effects, including sensorineural hearing loss and tinnitus, from the use of Defendant 3M's Dual-ended Combat Arms™ earplugs while deployed for active duty. (Ex A (Compl.) ¶¶ 89, 101, 110, 118, 124, 136, 145, 152, 173, Prayer for Relief).

## **BASIS OF JURISDICTION**

4. This case is removable based on diversity jurisdiction, 28 U.S.C. §§ 1332(a), 1441, and 1446.

1

5.     **Diversity of Citizenship.**  This Court has jurisdiction over this matter based on diversity of citizenship under Section 1332(a) because Plaintiff and Defendant are citizens of different states. 28 U.S.C. § 1332(a)(1).

6.     Plaintiff is a citizen of California.  (Ex. A (Compl.) ¶ 2.)

7.     Defendant is a corporation organized and existing under the laws of the state of Delaware with its principal place of business in St. Paul, Minnesota.  (Ex. A (Compl.) ¶ 3.).  Accordingly, Defendant was, at the time of filing of the Complaint, and still is, a citizen of the States of Delaware and Minnesota within the meaning of 28 U.S.C. §1332 (c)(1), which provides that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business…." *See also*, *3123 SMB LLC v. Horn*, 880 F.3d 461, 462-63 (9th Cir. 2018) (providing that, "[f]or purposes of determining diversity jurisdiction, 'a corporation shall be deemed to be a citizen of every State by which it has been incorporated and of the State where it has its principal place of business) (citing 28 U.S.C. § 1332(c)(1)). Defendant is not a citizen of California.

8.     Because Plaintiff is a citizen of California and Defendant is a citizen of Delaware and Minnesota, the two parties are completely diverse.

9.     That Plaintiff has joined fifty unidentified "Doe" defendants does not defeat removal on the basis of diversity of citizenship between him and Defendant. Federal courts do not consider the citizenship of unidentified Doe defendants when analyzing an action on the basis of diversity of citizenship.  28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998) ("[T]he citizenship of defendants sued under fictitious names shall be disregarded for purposes of removal.  As such, the district court was correct in only considering the domicile of named defendants.").

2

10. **Amount in Controversy.** The amount in controversy requirement of Section 1332(a) is also met. Where a plaintiff's state court complaint is silent as to the amount of damages claimed, the removing defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547, 551, 553 - 54 (2014). Although the Complaint does not specify the dollar amount of damages being sought, Defendant has a reasonable good faith belief that Plaintiff seeks damages in excess of $75,000 and meets the jurisdictional requirements of this Court for the following reasons:

(i) Plaintiff claims to have suffered serious and dangerous side effects, including sensorineural hearing loss and tinnitus (Complaint, *inter alia*, ¶¶ 73, 89, 101, 110, 118, 124, 136, 145, 152, 173, Prayer for Relief);

(ii) Plaintiff claims he is owed economic damages for medical and related expenses (Complaint at Prayer for Relief);

(iii) Plaintiff claims he is owed economic damages for loss of income (Complaint at Prayer for Relief);

(iv) Plaintiff claims he is entitled to punitive damages as a result of Defendant acting willfully, wantonly, with an evil motive and recklessly (Complaint *inter alia*, ¶¶ 89, 101, 110, 118, 124, 136, 145, 152, 173 - 175, Prayer for Relief);

(v) Plaintiff claims he is entitled to interest, costs of suit, and attorneys' fees (Complaint *inter alia*, ¶¶ 89, 101, 110, 118, 124, 136, 145, 152, 173, 174, Prayer for Relief).

11. In assessing whether a controversy exceeds $75,000, the Court must consider and include all relief to which the plaintiff is entitled if the action succeeds. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018).

12. Furthermore, the plaintiff in *Andrew Bridges v. 3M Company*, 2:19-CV-00327-JFW-AS, a related case in this district brought by the same law firm based on

similar underlying facts, injuries, causes of action and claims for relief, affirmatively pled that the amount in controversy exceeds the sum or value of $75,000.  (*See* Ex. F).

## REMOVAL IS TIMELY

13.     Removal is timely under 28 U.S.C. § 1446(b).  Defendant obtained a copy of the Complaint in this action no earlier than December 24, 2018 — the date on which the Complaint was filed.  (*See* Exs. A–E).  Pursuant to 28 U.S.C. 1446(b) Defendant has therefore filed this Notice of Removal within thirty days from when Defendant was in receipt of the Complaint.

## NOTICE TO THE STATE COURT

14.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiff and filed with the Superior Court of the State of California, County of San Bernardino, where this case was originally filed.

## VENUE

15.     The state court in which this case was commenced is within this Court's federal district.  (*See* Ex. A (Compl.)) Therefore, this action is properly removable to this Court pursuant to 28 U.S.C. § 1446(a).

16.     Accordingly, for the above reasons, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

## PROCESS, PLEADINGS, AND ORDERS 28 U.S.C. 1446(a)

17.     Defendant has attached a true and correct copy of all documents from the Superior Court's file that Defendant has obtained, attached as Exhibit A–E.

WHEREFORE, Defendant 3M respectfully requests that this action in the Superior Court of the State of California for the County of San Bernardino be removed to this Court, and that no further proceedings be had in state court.

DATED: January 23, 2019

Respectfully submitted,

KIRKLAND & ELLIS LLP

By: */s/ Kimberly Branscome*
Kimberly Branscome (SBN 255480)
Sierra Elizabeth (SBN 268133)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

# EXHIBIT A



# CIV-181224-CIV-DS1833456-CASEEN-085402

## Scanned Document Coversheet

System Code:   CIV

Case Number:   DS1833456

Case Type:     CIV

Action Code:   CASEEN

Action Date:   12/24/18

Action Time:   8:54

Action Seq:    0002

Printed by:    MAAND

THIS COVERSHEET IS FOR COURT PURPOSES ONLY, AND THIS IS NOT A PART OF THE OFFICIAL RECORD. YOU WILL NOT BE CHARGED FOR THIS PAGE

# Complaint and Party information entered



NEW FILE

1  Michael Akselrud (State Bar No. 285033)
   Lee Cirsch (State Bar No. 227668)
2  THE LANIER LAW FIRM, PC
   21550 Oxnard Street, 3rd Floor
3  Woodland Hills, CA 91367
   Telephone: (310) 277-5100
4  Facsimile: (310) 277-5103
   michael.akselrud@lanierlawfirm.com
5  lee.cirsch@lanierlawfirm.com

   Evan D. Buxner (*Pro Hac Vice Anticipated*)
   D. Todd Mathews (*Pro Hac Vice Anticipated*)
   Megan Arvola (*Pro Hac Vice Anticipated*)
   GORI JULIAN & ASSOCIATES, P.C.
   156 N. Main St.
   Edwardsville, IL, 62025
   Telephone: (618) 659-9833
   Facsimile: (618) 659-9834
   evan@gorijulianlaw.com
   todd@gorijulianlaw.com
   marvola@gorijulianlaw.com

7  W. Mark Lanier (*Pro Hac Vice Anticipated*)
8  Richard Meadow (*Pro Hac Vice Anticipated*)
   Rachel Lanier (*Pro Hac Vice Anticipated*)
9  THE LANIER LAW FIRM, PC
   Tower 56
10 126 East 56th Street, 6th Floor
11 Telephone: (212) 421-2800
   wml@lanierlawfirm.com
12 Richard.Meadow@lanierlawfirm.com
13 rachel.lanier@lanierlawfirm.com

14 *Attorneys for Plaintiffs*

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO CIVIL DIVISION

DEC 2 4 2018

BY _____
MANUEL HENRY ANDRIANO, DEPUTY

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN BERNARDINO- UNLIMITED JURISDICTION

| | |
|---|---|
| ROBIN KENNEDY,<br><br>Plaintiff(s)<br><br><br>v.<br><br><br>3M COMPANY, and DOES, ONE Through FIFTY, inclusive.<br><br>Defendants. | CASE NO.   CIVDS1833456<br><br>COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL<br><br>1. Design Defect- Negligence<br>2. Design Defect- Strict Liability<br>3. Failure to Warn- Negligence<br>4. Breach of Express Warranty<br>5. Breach of Implied Warranties<br>6. Fraudulent Misrepresentation<br>7. Fraudulent Concealment<br>8. Negligent Misrepresentation<br>9. Fraud and Deceit<br>10. Punitive Damages |

15
16
17
18
19
20
21
22
23
24
25
26
27
28





□ **ORIGINAL**

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

PLAINTIFF Robin Kennedy ("Plaintiff"), by and through the undersigned counsel, brings this Complaint seeking judgment against Defendant 3M COMPANY; (hereinafter referred to as "Defendant," "3M," or "3M/Aearo") for personal injuries incurred while in training and/or on active military duty, resulting from Defendant's defective and unreasonably dangerous product, the Dual-ended Combat Arms™ earplugs (Version 2 CAEv.2) ("Dual-ended Combat Arms™ earplugs"). At all times relevant hereto, the Dual-ended Combat Arms™ earplugs were manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, promoted, distributed, and sold by Defendant.

## I.  **INTRODUCTION AND SUMMARY OF ACTION**

1.     Plaintiff Robin Kennedy, a United States Marine Corps veteran, brings this suit to recover damages arising from personal injuries sustained while in training and/or on active military duty domestically and abroad. While on active duty, Plaintiff used Defendant's dangerously defective Dual-ended Combat Arms™ earplugs during convoys, patrolling, firing weapons, and any time he was in the field. Defendant sold the Dual-ended Combat Arms™ earplugs to the U.S. military for more than a decade without the military and/or Plaintiff having any knowledge of the defect(s) and failed to adequately warn the military and/or Plaintiff of the defect(s). Defendant's Dual-ended Combat Arms™ earplugs were standard issue in certain branches of the military (including Plaintiff's) during foreign conflicts between at least 2003 to at least 2015. Thus, Defendant's Dual-ended Combat Arms™ earplugs have likely caused thousands, if not millions, of soldiers to suffer significant hearing loss, tinnitus, and additional injuries related to hearing loss, including but not limited to pain and suffering and loss of the pleasures of life.

## II.  **PARTIES**

2.     Plaintiff, Robin Kennedy, is a citizen and resident of San Jacinto, Riverside County, California.

3.     Defendant is a corporation organized and existing under the laws of the state of Delaware with its principal place of business in St. Paul, Minnesota. Among other things, Defendant is in the business of designing, manufacturing, testing, and selling worker safety products, including hearing protectors and respirators. Defendant has a dominant market share in virtually every safety product market, including hearing protection. Defendant is one of the largest companies in the country.

4.     Defendant was and is authorized to do business in the State of California and was and is engaged in substantial, systematic, and continuous business activities in California, including San Bernardino County.

5.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1-50 and therefore sues these defendants by such fictitious names pursuant to *California Code of Civil Procedure* §474. Plaintiff is informed and believes, and upon such information and belief, alleges that each of the defendants designated as a Doe are legally responsible in some manner for the events and happenings and caused damages, as alleged herein. Plaintiff will seek leave of the Court to amend this Complaint to show the true names and capacities of the defendants, designated as Does, when the same has been ascertained.

### III.     JURISDICTION AND VENUE

6.     The California Superior Court has jurisdiction over all DEFENDANTS because, based on information and belief, each is a corporation and/or entity and/or person organized under the laws of, or has its principal place of business in, the State of California, or is a foreign corporation or association authorized to do business in the State of California and registered with the California Secretary of State, or has sufficient minimum contacts in California, is a Citizen of California, or otherwise intentionally avails itself of the California market so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

7.     Further, Defendants have purposefully availed themselves of the benefits and protections of the laws within the state of California. Defendants conducts substantial, continuous, and systematic business in California and have sufficient contacts with California such that the

1  exercise of jurisdiction would be consistent with the traditional notions of fair play and substantial

2  justice. In fact, there are over 30 military bases in California that include serviceman from all four

3  branches of the military and the California National Guard and Army Reserve.

4       8.    Further, Plaintiff's claims arise out of Defendant 3M's purposeful contacts with

5  California.

6       9.    Therefore, personal jurisdiction is proper under California Code of Civil Procedure

7  § 410.10 and the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution

8  of the United States of America.

9       10.    Venue is proper in this county in accordance with §395(a) of the California Code

10  of Civil Procedure because the injuries alleged herein arose from conduct that occurred in this

11  county.

12  ## IV.    **FACTUAL ALLEGATIONS**

13       11.    Based upon information and belief, and in part upon the pleadings and allegations

14  as contained in *United States ex rel. Moldex-Metric, Inc. v. 3M Company,* Case No. 3:16-cv-

15  01533-DCC (D.S.C. 2016), Plaintiff states as follows:

16       12.    On July 26, 2018, Defendant agreed to pay $9.1 million to resolve allegations that

17  it knowingly sold the Dual-ended Combat Arms™ Earplugs to the United States military without

18  adequately warning about defects and/or disclosing defects that hampered the effectiveness of the

19  hearing protection device. *See* United States Department of Justice, *3M Company Agrees to Pay*

20  *$9.1 Million to Resolve Allegations That it Supplied the United States With Defective Dual-Ended*

21  *Combat Arms Earplugs* (Jul. 26, 2018), *available at* https://www.justice.gov/opa/pr/3m-

22  company-agrees-pay-91-million-resolve-allegations-it-supplied-united-states-defective-dual

23  (last visited November 29, 2018).

24       13.    Defendant's Dual-ended Combat Arms™ earplugs are non-linear, or selective

25  attenuation, earplugs which were designed to provide soldiers with two different options for

26  hearing attenuation depending upon how the plugs are worn. Both sides of the dual-sided earplugs

27  were purported to provide adequate protection for soldier's ears when worn.

28

14. If worn in the "closed" or "blocked" position (olive end in), the earplugs are intended to act as a traditional earplug and block as much sound as possible.

15. If worn in the "open" or "unblocked" position (yellow side in user's ear), the earplugs are intended reduce loud impulse sounds, such as battlefield explosions and artillery fire, while allowing the user to hear quieter noises; for example, commands spoken by fellow soldiers and approaching enemy combatants.

16. Defendants' standard fitting instructions state the wearer is to grasp the earplug by the stem and insert it into the ear canal.

17. The design of the earplug prevents a snug fit in the ear canal of the wearer, an inherent defect about which there was no adequate warning.

18. When inserted according to Defendant's standard fitting instructions, the edge of the third flange of the non-inserted end of the earplug presses against the wearers' ear canal and folds back to its original shape, thereby loosening the seal in their ear canals and providing inadequate protection.

19. Because the earplugs are symmetrical, the standard fitting instructions will result in a loosening of the seal whether either side is inserted into the ear canal.

20. These earplugs were originally created by a company called Aearo Technologies ("Aearo" or "3M/Aearo").

21. Defendant 3M acquired Aearo in 2008, including Aearo's liabilities, (and thus 3M is liable for Aearo's conduct as alleged herein).

22.     Earplugs like the Dual-ended Combat Arms™ earplugs are sold with a stated Noise Reduction Rating ("NRR")[1] that should accurately reflect the effectiveness of hearing protection.

23.     The military likely purchased, at a minimum, one pair of 3M's Combat Arms™ earplugs for each deployed soldier annually involved in certain foreign engagements between at least 2003 and at least 2015. *See* McIlwain, D. Scott *et al.*, *Heritage of Army Audiology and the Road Ahead: The Army Hearing Program*, AMERICAN JOURNAL OF PUBLIC HEALTH, Vol. 98 No. 12 (Dec. 2008).

24.     3M's/Aearo's Dual-ended Combat Arms™ earplugs were sold to the military beginning in at least late 2003 and continued to be sold directly and indirectly by 3M to the military until at least late 2015, when Defendant discontinued the earplugs.

25.     The defective earplugs have not been recalled and therefore could very well be in continued use by soldiers and others.

**History of Testing**

**January 2000 Testing**

26.     Employees from 3M/Aearo began testing the Dual-ended Combat Arms™ earplugs in approximately January 2000.

27.     3M/Aearo chose to conduct the testing at its own laboratory rather than an outside, independent laboratory.

28.     3M/Aearo's employees personally selected ten test subjects (some of whom were also employees of 3M/Aearo) to test the Dual-ended Combat Arms™ earplugs.

29.     3M/Aearo's employees intended to test: (1) the subject's hearing without an earplug inserted; (2) the subject's hearing with the open/unblocked (yellow) end of the

---

[1] Noise Reduction Rating (NRR) is a unit of measurement used to determine the effectiveness of hearing protection devices to decrease sound exposure within a given working environment. Classified by their potential to reduce noise in decibels (dB), a term used to categorize the power or density of sound, hearing protectors must be tested and approved by the American National Standards (ANSI) in accordance with the Occupational Safety & Health Administration (OSHA). The higher the NRR number associated with a hearing protector, the greater the potential for noise reduction.

1  Dual- ended Combat Arms™ earplug inserted; and (3) the subject's hearing with the

2  closed/blocked (olive) end of the Dual- ended Combat Arms™ earplug inserted. This testing

3  was designed to provide data regarding the "NRR" of the Dual- ended Combat Arms™ earplugs.

4      30.    3M/Aero personnel monitored the results of each subject as the test was performed

5  and could thus stop the test if the desired NRR results were not achieved.

6      31.    Eight of the ten subjects were tested using both the open and closed end of the

7  Dual- ended Combat Arms™ earplug.

8      32.    Testing of the eight subjects suggested an average NRR of 10.9, which was far

9  below the adequate NRR that 3M/Aero personnel would and should have expected for the closed

10  end.

11      33.    3M/Aero prematurely terminated the January 2000 testing of the closed end of the

12  Dual- ended Combat Arms™ earplug.

13      34.    3M/Aero personnel determined that when the closed, olive end of the earplug was

14  inserted into the wearer's ear according to standard fitting instructions, the basal edge of the

15  third flange of the open, yellow end would press against the wearer's ear and fold backwards.

16  When the inward pressure on the earplug was released, the yellow side flanges would return to

17  their original shape and cause the earplug to loosen, often imperceptible to the wearer.

18      35.    The symmetrical nature of the earplug prevents a snug fit when worn either "open"

19  or "closed" according to the standard fitting instructions.

20      36.    3M/Aero personnel determined that a snug fit requires the flanges on the opposite,

21  non-inserted end of the ear plug to be folded back prior to insertion.

22      37.    3M/Aearo personnel decided not to test the closed end of the Dual- ended Combat

23  Arms™ earplug for two of the ten subjects because the results were well below the intended and

24  desired NRR.

25      38.    3M/Aero completed testing of all ten subjects with the open end of the Dual- ended

26  Combat Arms™ earplug to obtain a facially invalid -2 NRR, which would indicate that the

27  closed end of the earplug actually amplified sound.

28

39.     3M/Aero represented the -2 NRR as a "0" NRR which 3M/Aero has displayed on its packaging since its launch.

40.     3M/Aero falsely touts the "0" NRR as a benefit of the Dual- ended Combat Arms™ earplug, by suggesting that soldiers will be able to hear their fellow soldiers and enemies while still providing some protection. As stated however, the "true" -2 NRR actually amplifies sound thereby exposing the wearer to harm.

**February 2000 Testing**

41.     Upon identifying the fit issue, 3M/Aero re-tested the olive, closed end of the Dual-ended Combat Arms™ earplug in February 2000 using different fitting instructions.

42.     When testing the closed end, 3M/Aero personnel folded back the yellow flanges on the open end of the Dual- ended Combat Arms™ earplug prior to insertion.

43.     Using this "modified" fitting procedure, 3M/Aero achieved a "22" NRR on the closed end of the Dual- ended Combat Arms™ earplug.

44.     3M, however, never properly warned serviceman that the only potential way to achieve this purported NRR was to modify the Dual- ended Combat Arms™ earplug by folding the yellow flanges on the opposite end.

45.     The yellow, open end of the Dual- ended Combat Arms™ earplug was not re-tested using the "modified" fitting procedure.

**Defendant's Representations and Omissions**

46.     Since 2003, 3M/Aearo has been awarded multiple Indefinite-Quantity Contracts ("IQC") from the U.S. military in response to Requests for Production ("RFP").

47.     From 2003-2012, 3M/Aearo was the exclusive supplier of these type of earplugs to the U.S. military.

48.     3M/Aearo was aware of the design defects alleged herein in as early as 2000.

49.     Accordingly, the defects of the Dual-ended Combat Arms™ earplugs were known to Defendant many years before 3M/Aearo became the exclusive provider of the earplugs to the U.S. military.

50.     3M/Aearo knew at the time it bid for the initial IQC that the Dual-ended Combat Arms™ earplugs had dangerous design defects as they would not adequately protect the users from loud sounds and did not adequately warn of the defects or adequately warn how to wear the earplugs.

51.     3M/Aero responded to the military's Requests for Proposal ("RFP") with express certifications that it complied with the Salient Characteristics of Medical Procurement Item Description ("MPID") of Solicitation No. SP0200-06-R-4202.

52.     3M/Aearo knew at the time it made its certifications that the earplugs did not comply with the MPID.

53.     3M/Aearo knew the design defects could cause the earplugs to loosen in the wearer's ear, imperceptibly to the wearer and even trained audiologists visually observing a wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug, while the user and/or audiologist incorrectly believes that the earplug is working as intended.

54.     The pertinent Salient Characteristics set forth in the MPID, which were uniform across all RFPs, in relevant part, are as follows:

> 2.1.1 Ear plugs shall be designed to provide protection from the impulse noises created by military firearms, while allowing the wearer to clearly hear normal speech and other quieter sounds, such as voice commands, on the battlefield.
> 2.2.2. The sound attenuation of both ends of the ear plugs shall be tested in accordance with ANSI S3.19.
>
> 2.4 Workmanship. **The ear plugs shall be free from all defects that detract from their appearance or impair their serviceability**.
>
> **2.5** Instructions.    **Illustrated instructions explaining the proper use and handling of the ear plugs shall be supplied with each unit**.

Solicitation No. SP0200-06-R-4202 at 41-42. Emphasis added.

55.     The Environmental Protection Agency ("EPA") has also promulgated regulations pursuant to the Noise Control Act, 42 U.S.C. § 4901, *et seq.*, that govern the testing and attendant

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

labeling of hearing protective devices like the Dual-ended Combat Arms™ earplugs. Specifically, 40 C.F.R. § 211.206-1 provides that:

> The value of sound attenuation to be used in the calculation of the Noise Reduction Rating must be determined according to the "Method for the Measurement of Real-Ear Protection of Hearing Protectors and Physical Attenuation of Earmuffs." This standard is approved as the American National Standards Institute Standard (ANSI-STD) S3.19- 1974.

56.    Additionally, 40 C.F.R. § 211.204-4(e), of the EPA regulations requires certain "supporting information" must accompany hearing protection devices sold in the United States:

> The following minimum supporting information must accompany the device in a manner that insures its availability to the prospective user. In the case of bulk packaging and dispensing, such supporting information must be affixed to the bulk container or dispenser in the same manner as the label, and in a readily visible location. **Instructions as to the proper insertion or placement of the device.** (emphasis added).

57.    3M/Aearo knowingly used the deliberately flawed retest of the closed end of the earplugs to sell Dual-ended Combat Arms™ earplugs to the military with the representation that they possess a "22" NRR in the closed position.

58.    Defendant includes standard instructions for "proper use" of the earplugs in the packaging for the earplugs as required by the EPA, Noise Control Act, and the MPID.

59.    Defendant's standard instructions for "proper use" of its Dual-ended Combat Arms™ earplugs do not instruct wearers to fold back the flanges of the opposite end before inserting the plug into the ear.

60.    Instead, Defendant improperly instructs wearers to simply insert the earplugs into the ear canal.

61.    By failing to instruct wearers of the Dual-ended Combat Arms™ earplug to fold back the flanges on the open/unblocked end of the plug before inserting the closed/blocked end of the plug into their ears (which is necessary to achieve the "22" NRR), 3M/Aearo falsely overstates the amount of hearing protection provided by the closed end of the plug.

62.     3M's/Aearo's packaging and marketing of such earplugs with a labeled NRR of "22" thereby misleads the wearer and has likely caused thousands of soldiers to suffer significant hearing loss and tinnitus in addition to exposing millions more to the risk caused by 3M/Aearo's defective earplugs.

63.     Despite knowing that its flawed testing involved steps to manipulate the fit of the earplug, 3M's/Aearo's standard instructions for use of the earplugs do not instruct, and never have instructed, the wearer to fold back the flanges on the open end of the plug before inserting the closed end of the plug into their ears (which is necessary to achieve the "22" NRR and avoid the defect associated with the short stem).

64.     3M's/Aearo's instructions instead have provided standard fitting instructions for inserting the earplug on both ends which are facially inadequate.

65.     3M/Aearo was aware prior to selling the earplugs to the military, testing procedures and fitting instructions were unlawfully manipulated to obtain the NRRs it wanted on both ends of the Dual-ended Combat Arms™ earplug, and 3M/Aearo continued to use these inaccurate NRRs to market the earplugs to the military for more than ten years without disclosing the design defect in the plugs.

66.     Plaintiff reserves the right to supplement these facts after discovery.

### Plaintiff Robin Kennedy

67.     Plaintiff joined the Unites States Marine Corps in 1998 at the age of 18 and retired in June 2018.

68.     Prior to joining the military, Plaintiff had no signs or symptoms of hearing loss or tinnitus.

69.     Plaintiff was deployed for active duty in 1999, 2001, 2003, 2008, 2011, and 2017.

70.     3M Dual-ended Combat Arms™ earplugs were standard issue while Plaintiff was on active duty from at least 2003 to at least 2015.

71.     Plaintiff wore the Dual-ended Combat Arms™ earplugs on convoys, patrolling, firing weapons, and any time he was in the field.

72. Plaintiff wore the Dual-ended Combat Arms™ earplugs while firing weapons at Marine Corps Air Ground Combat Center located in Twentynine Palms, San Bernardino County, California.

73. Plaintiff was diagnosed with hearing loss and tinnitus in both ears in 2012 in California.

## V.   CAUSES OF ACTION

### First Cause of Action
### Design Defect - Negligence

74. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

75. At all times relevant to this action, Defendant had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, and distribute, the Dual-ended Combat Arms™ with reasonable and due care for the safety and well-being of U.S. military service men and women, including Plaintiff, who were subject to and used the Dual-ended Combat Arms™ earplugs during their service with the U.S. military.

76. Plaintiff was a foreseeable user of the Dual-ended Combat Arms™ earplugs and Defendant knew that the Dual-ended Combat Arms™ earplugs would be used by U.S. military service men and women, including Plaintiff.

77. The Dual-ended Combat Arms™ earplugs are defective in that the design of the earplug causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

78. When the Dual-ended Combat Arms™ is inserted into the ear according to standard fitting instructions, a proper seal is not formed with the ear canal.

79. The defect has the same effect when either end is inserted because the earplugs are symmetrical. In either scenario, the effect is that the earplug may not maintain a tight seal

in some wearers ear canals such that dangerous sounds can bypass the plug altogether thereby posing serious risk to the wearer's hearing unbeknownst to him or her.

80.    Upon information and belief, Defendant failed to exercise reasonable and due care under the circumstances and therefore breached this duty in the following ways:

a.  Defendant failed to design the Dual-ended Combat Arms™ in a manner which would result in a NRR of "22" when used with the closed, olive end inserted, according to the standard fitting instructions provided by Defendant.

b.  Defendant failed to properly and thoroughly test the Dual-ended Combat Arms™ earplugs;

c.   Defendant failed to properly and thoroughly analyze the data resulting from testing of the Dual-ended Combat Arms™ earplugs;

d.  Defendant designed, manufactured, distributed, and sold the Dual-ended Combat Arms™ earplugs without an adequate warning of the significant and dangerous risks of the earplugs;

e.  Defendant designed, manufactured, distributed, and sold the Dual-ended Combat Arms™ earplugs without providing proper instructions to avoid the harm which could foreseeably occur as a result of using the earplugs in the manner the Defendant's standard fitting instructions directed;

f.   Defendant failed to fulfill the standard of care required of a reasonable and prudent manufacturer of hearing protection products, specifically including products such as the Dual-ended Combat Arms™ earplugs; and

g.  Defendant negligently continued to manufacture and distribute the Dual-ended Combat Arms™ earplugs (Version 2 CAEv.2) to the U.S. military after Defendant knew or should have known of its adverse effects and/or the availability of safer designs.

81.    Defendant knew or should have known that the defective condition of the Dual-ended Combat Arms™ earplugs made it unreasonably dangerous to the U.S. military service men and women who used the earplugs.

82.    The Dual-ended Combat Arms™ earplugs were dangerous when used by ordinary U.S. military service men and women who used it with the knowledge common to the U.S. military as to the product's characteristics and common usage.

83. Defendant knew or should have known of the defective design at the time the Dual-ended Combat Arms™ earplugs were used by Plaintiff.

84. At the time the Dual-ended Combat Arms™ earplugs were used by Plaintiff and left the possession of Defendant, the Dual-ended Combat Arms™ earplugs were in a condition which made it unreasonably dangerous to the ordinary U.S. military service member.

85. At all relevant times, Plaintiff used the Dual-ended Combat Arms™ earplugs in the manner in which they were intended.

86. As designers, developers, manufacturers, inspectors, advertisers, distributors, and suppliers, of the Dual-ended Combat Arms™ earplugs, Defendant had superior knowledge of the Dual-ended Combat Arms™ earplugs and owed a duty of care to Plaintiff.

87. It was foreseeable that Defendant's actions, omissions, and misrepresentations would lead to severe, permanent, and debilitating injuries to the Plaintiff.

88. The Dual-ended Combat Arms™ earplugs were the proximate cause of Plaintiff's personal injuries – specifically Plaintiff's sensorineural hearing loss and tinnitus. Defendant's conduct was a substantial factor in bringing about the injuries sustained by Plaintiff because 3M designed, manufactured, tested, sold, and distributed the Dual-ended Combat Arms™ earplugs to the U.S. military.

89. As a direct and proximate result of Defendant's negligence in designing the defective Dual-ended Combat Arms™ earplugs, Plaintiff was caused to sufferer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

WHEREFORE, Plaintiff demands judgment against DEFENDANTS, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

**Second Cause of Action**
**Design Defect- Strict Liability**

90.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

91.     Plaintiff was a foreseeable user of the Dual-ended Combat Arms™ earplugs.

92.     The Dual-ended Combat Arms™ earplugs are defective in that the design of the earplug causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

93.     Defendant knew that the defective condition of the Dual-ended Combat Arms™ earplugs made it unreasonably dangerous to the U.S. military service members who used the device.

94.     The Dual-ended Combat Arms™ earplugs were dangerous when used by an ordinary user who used it as it was intended to be used.

95.     The Dual-ended Combat Arms™ earplugs were dangerous to an extent beyond which would be contemplated by the ordinary user who purchased the device because the design of the Dual-ended Combat Arms™ earplugs allow for dangerous sounds to bypass the plug altogether, thereby posing a serious risk to a U.S military service members' hearing unbeknownst to him or her.

96.     Defendant knew of the defective design at the time the Dual-ended Combat Arms™ earplugs were provided to Plaintiff.

97.     At the time the Dual-ended Combat Arms™ earplugs left Defendant's possession, the Dual-ended Combat Arms™ earplugs were defective and were in a condition which made them unreasonably dangerous to the ordinary U.S. military service member who used them.

98.     At all relevant times, Plaintiff used the Dual-ended Combat Arms™ earplugs in the manner in which they were intended.

99.     The Dual-ended Combat Arms™ earplugs were the proximate cause of

1  Plaintiff's hearing loss and tinnitus because the short -stem design of the earplugs allow for

2  dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiff's

3  hearing unbeknownst to him.

4      100.    Defendant's conduct was a substantial factor in bringing about Plaintiff's

5  personal injuries because Defendant designed, tested, manufactured, sold, and distributed the

6  Dual-ended Combat Arms™ earplugs that caused Plaintiff's hearing loss and tinnitus.

7      101.    As a direct and proximate result of Defendant's design defect, Plaintiff was

8  caused to sufferer serious and dangerous side effects, including sensorineural hearing loss

9  and tinnitus, and has further suffered the injuries and damages as alleged herein.

10      WHEREFORE, Plaintiff demands judgment against DEFENDANTS, and each of them

11  individually, jointly, severally and in the alternative, requests compensatory damages, punitive

12  damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court

13  deems equitable and just.

### Third Cause of Action
### Failure to Warn–Negligence

17      102.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth

18  herein and further alleges as follows:

19      103.    At all times relevant to this action, Defendant had a duty to manufacture,

20  design, formulate, test, package, label, produce, create, make, construct, assemble, market,

21  advertise, promote, and distribute, the Dual-ended Combat Arms™ with reasonable and due

22  care for the safety and well-being of U.S. military service men and women, including

23  Plaintiff, who were subject to and used the Dual-ended Combat Arms™ earplugs during their

24  service with the U.S. military.

25      104.    Plaintiff was a foreseeable user of the Dual-ended Combat Arms™ earplugs.

26      105.    The Dual-ended Combat Arms™ earplugs are defective, in part, in that the

27  design of the earplug causes them to loosen in the wearer's ear, imperceptibly to the wearer,

28  thereby permitting damaging sounds to enter the ear canal by traveling around the outside of

the earplug while the user incorrectly believes that the earplug is working as intended

106.    The Dual-ended Combat Arms™ earplugs contained no warnings, or in the alternative, inadequate warnings and/or instructions, as to the risk that the Dual-ended Combat Arms™ earplugs would allow for dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to him.

107.    The warnings and instructions that accompanied the Dual-ended Combat Arms™ earplugs failed to provide that level of information that an ordinary consumer would expect when using the Dual-ended Combat Arms™ earplugs in a manner reasonably foreseeable to Defendant.

108.    Had Plaintiff received a proper or adequate warning as to the risks associated with the Dual-ended Combat Arms™ earplugs, he would not have used the Dual-ended Combat Arms™ earplugs.

109.    The Dual-ended Combat Arms™ earplugs were the proximate cause of Plaintiff's hearing loss and tinnitus because design of the earplugs allows for dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to him.

110.    As a direct and proximate result of Defendant's failure to warn, Plaintiff was caused to sufferer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

WHEREFORE, Plaintiff demands judgment against DEFENDANTS, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## Fourth Cause of Action
### Breach of Express Warranty

111.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

112.     Through Defendant's public statements, descriptions of the Dual-ended Combat Arms™ earplugs, and promises relating to the Dual-ended Combat Arms™ earplugs, Defendant expressly warranted, among other things, that the Dual-ended Combat Arms™ earplugs were safe and effective for their intended use, and were designed and constructed to prevent harmful sounds from bypassing the earplugs i to protect the user's hearing.

113.     These warranties came in one or more of the following forms: (i) publicly made written and verbal assurances of safety; (ii) press releases and dissemination via the media, or uniform promotional information that was intended to create a demand for the Dual-ended Combat Arms™ earplugs (but which contained material misrepresentations and utterly failed to warn of the risks of the Dual-ended Combat Arms™ earplugs); (iii) verbal assurances made by Defendant's consumer relations personnel about the safety of the Dual-ended Combat Arms™ earplugs which also downplayed the risks associated with the Dual-ended Combat Arms™ earplugs; and, (iv) false and misleading written information and packaging supplied by Defendant.

114.     When Defendant made these express warranties, it knew the purpose(s) for which the Dual-ended Combat Arms™ earplugs were to be used and warranted it to be in all respects safe and proper for such purpose(s).

115.     Defendant drafted the documents and/or made statements upon which these warranty claims are based and, in doing so, defined the terms of those warranties.

116.     The Dual-ended Combat Arms™ earplugs do not conform to Defendant's promises, descriptions, or affirmation of fact, and was not adequately packaged, labeled, promoted, and/or fit for the ordinary purposes for which such earplugs are used.

117.     Plaintiff further alleges that all of the aforementioned written materials are known to Defendant and in its possession, and it is Plaintiff s reasonable belief that these materials shall be produced by Defendant and be made part of the record once Plaintiff is afforded the opportunity to conduct discovery.

118.     As a direct and proximate result of Defendant's breach of the express warranties, Plaintiff was caused to sufferer serious and dangerous side effects, including sensorineural

1  hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

2      WHEREFORE, Plaintiff demands judgment against DEFENDANTS, and each of them

3  individually, jointly, severally and in the alternative, requests compensatory damages, punitive

4  damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court

5  deems equitable and just.

### Fifth Cause of Action
### Breach of Implied Warranties

9      119.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth

10  herein and further alleges as follows:

11      120.    At the time Defendant marketed, sold, and distributed the Dual-ended Combat

12  Arms™ earplugs, Defendant knew of the use for which the Dual-ended Combat Arms™ earplugs

13  were intended and impliedly warranted the Dual-ended Combat Arms™ earplugs to be fit for a

14  particular purpose and warranted that the Dual-ended Combat Arms™ earplugs were of

15  merchantable quality and effective for such use.

16      121.    Defendant knew, or had reason to know, that Plaintiff would rely on Defendant's

17  judgment and skill in providing the Dual-ended Combat Arms™ earplugs for its intended use.

18      122.    Plaintiff reasonably relied upon the skill and judgment of Defendant as to whether

19  the Dual-ended Combat Arms™ earplugs were of merchantable quality, safe, and effective for

20  its intended use.

21      123.    Contrary to such implied warranties, the Dual-ended Combat Arms™ earplugs

22  were neither of merchantable quality, nor safe or effective for its intended use, because the Dual-

23  ended Combat Arms™ earplugs were, and are, unreasonably dangerous, defective, unfit and

24  ineffective for the ordinary purposes for which the Dual-ended Combat Arms™ earplugs were

25  used.

26      124.    As a direct and proximate result of Defendant's breach of implied warranties,

27  Plaintiff was caused to sufferer serious and dangerous side effects, including sensorineural

28  hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

WHEREFORE, Plaintiff demands judgment against DEFENDANTS, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### Sixth Cause of Action
### Fraudulent Misrepresentation

125. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

126. Defendant falsely and fraudulently represented to Plaintiff, and/or the public in general, that the Dual-ended Combat Arms™ earplugs had been properly tested and were free from all defects.

127. Defendant intentionally manipulated testing of the Dual-ended Combat Arms™ earplugs, resulting in false and misleading NRRs and improper fitting instructions.

128. The representations made by Defendant were, in fact, false.

129. When said representations were made by Defendant, it knew those representations to be false and it willfully, wantonly and recklessly disregarded whether the representations were true.

130. These representations were made by said Defendant with the intent of defrauding and deceiving Plaintiff and the public in general, and were made with the intent of inducing Plaintiff and the public in general, to recommend, purchase, and/or use the Dual-ended Combat Arms™ earplugs, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff herein.

131. At the time the aforesaid representations were made by Defendant and, at the time Plaintiff used the Dual-ended Combat Arms™ earplugs, Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

132. In reliance upon said representations, Plaintiff was induced to and did use Dual-ended Combat Arms™ earplugs, thereby sustaining severe and permanent personal injuries.

133. Said Defendant knew and was aware or should have been aware that the Dual-ended Combat Arms™ earplugs had not been sufficiently tested, were defective in nature, and/or that they lacked adequate and/or sufficient instructions.

134. Defendant knew or should have known that the Dual-ended Combat Arms™ earplugs had a potential to, could, and would cause severe and grievous injury to the users of said product.

135. Defendant brought the Dual-ended Combat Arms™ earplugs to the market, and acted fraudulently, wantonly and maliciously to the detriment of Plaintiff.

136. As a result of the foregoing acts and omissions, Plaintiff was caused to sufferer serious and dangerous side effects including, sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

WHEREFORE, Plaintiff demands judgment against DEFENDANTS, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### Seventh Cause of Action
### Fraudulent Concealment

137. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

138. At all times relevant, Defendant misrepresented the safety and efficacy of the Dual-ended Combat Arms™ earplugs for their intended use.

139. Defendants knew or were reckless in not knowing that their representations were false.

140. In representations to Plaintiff, Defendant fraudulently concealed and intentionally omitted the following material information:

      (a) that testing of the Dual-ended Combat Arms™ earplug was deliberately flawed;

      (b) the amount of hearing protection provided by the Combat Arms™ earplug;

(c) that Defendant was aware of the defects in the Dual-ended Combat Arms™ earplug;

(d) that the Dual-ended Combat Arms™ earplug was defective, and would cause dangerous side effects, including but not limited to hearing damage or impairment;

(e) that the Dual-ended Combat Arms™ earplug was manufactured negligently;

(f) that the Dual-ended Combat Arms™ earplug was manufactured defectively;

(g) that the Dual-ended Combat Arms™ earplug was designed defectively;

(h) that the Dual-ended Combat Arms™ earplug was designed negligently; and,

(i) that the Dual-ended Combat Arms™ earplug was designed improperly.

141. Defendant was under a duty to disclose to Plaintiff the defective nature of the dual-end Combat Arms™ earplug.

142. Defendant had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used the dual-end Combat Arms™ earplug, including Plaintiff, in particular.

143. Defendant's concealment and omissions of material facts concerning, inter alia, the safety and efficacy of the Dual-end Combat Arms™ earplug was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff into reliance, continued use of the dual-end Combat Arms™ earplug, and actions thereon, and to cause him to purchase and/or use the product. Defendant knew that Plaintiff had no way to determine the truth behind Defendant's concealment and omissions, and that these included material omissions of facts surrounding the Dual-end Combat Arms™ earplug, as set forth herein.

144. Plaintiff reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendant.

145. By reason of the foregoing, Plaintiff was caused to sufferer serious and dangerous side effects including, sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

WHEREFORE, Plaintiff demands judgment against DEFENDANTS, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### Eighth Cause of Action
### Negligent Misrepresentation

146.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

147.    Defendant had a duty to represent to Plaintiff and the public in general that the Dual-ended Combat Arms™ earplug had been properly tested and found to be effective.

148.    Defendant was aware its testing procedures and fitting instructions were unlawfully manipulated.

149.    The representations made by Defendant were, in fact, false.

150.    Defendant failed to exercise ordinary care in the representation of the Dual-ended Combat Arms™ earplug, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution into interstate commerce, in that Defendant negligently misrepresented the Dual-ended Combat Arms™ earplug's safety and efficacy.

151.    Defendant breached its duty in representing the Dual-ended Combat Arms™ earplug's serious defects to Plaintiff.

152.    As a result of the foregoing acts and omissions, Plaintiff was caused to sufferer serious and dangerous side effects including, sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

WHEREFORE, Plaintiff demands judgment against DEFENDANTS, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### Ninth Cause of Action
### Fraud and Deceit

153.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

154.    Defendant conducted unlawful and improper testing on the Dual-ended Combat Arms™ earplug.

155.    As a result of Defendant's unlawful and improper testing, Defendant blatantly and intentionally distributed false information which overstated the amount of hearing protection provided by the Dual-ended Combat Arms™ earplug.

156.    As a result of Defendant's unlawful and improper testing, Defendant intentionally omitted and misrepresented certain test results to Plaintiff.

157.    Defendant had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and Plaintiff.

158.    The information distributed to Plaintiff by Defendant contained material representations of fact and/or omissions concerning the hearing protection provided by the Dual-ended Combat Arms™ earplug.

159.    These representations were all false and misleading.

160.    Upon information and belief, Defendant intentionally suppressed and/or manipulated test results to falsely overstate the amount of hearing protection provided by the Dual-ended Combat Arms™ earplug.

161.    That it was the purpose of Defendant in making these representations to deceive and defraud the public and/or Plaintiff, to gain the confidence of the public, and/or Plaintiff, to falsely ensure the quality and fitness for use of the Dual-ended Combat Arms™ earplug and induce the public, and/or Plaintiff to purchase, request, dispense, recommend, and/or continue to use the Dual-ended Combat Arms™ earplug.

162.   Defendant made the aforementioned false claims and false representations with the intent of convincing the public and/or Plaintiff that the Dual-ended Combat Arms™ earplug was fit and safe for use.

163.   That these representations and others made by Defendant were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

164.   That these representations and others, made by Defendant, were made with the intention of deceiving and defrauding Plaintiff, and were made in to induce Plaintiff to rely upon misrepresentations and caused Plaintiff to purchase, use, rely on, request, dispense, and/or recommend the Dual-ended Combat Arms™ earplug.

165.   That Defendant, recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms™ earplug to the public at large, Plaintiff in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives.

166.   That Defendant willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of Dual-ended Combat Arms™ earplug by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of Dual-ended Combat Arms™ earplug.

167.   That Defendant willfully and intentionally failed to disclose the truth, failed to disclose material facts and made false representations with the purpose and design of deceiving and lulling Plaintiff, into a sense of security so that Plaintiff would rely on the representations made by Defendant, and purchase, use and rely on the Dual-ended Combat Arms™ earplug.

168.   That Plaintiff did in fact rely on and believe the Defendant's representations to be true at the time they were made and relied upon the representations and were thereby induced to use and rely on the Dual-ended Combat Arms™ earplug.

169.   That at the time the representations were made, Plaintiff did not know the truth regarding the dangerous and serious safety concerns of the Dual-ended Combat Arms™ earplug.

170.    That Plaintiff did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants, nor could Plaintiff with reasonable diligence have discovered the true facts.

171.    That had Plaintiff known the true facts with respect to the dangerous and serious health and/or safety concerns of Dual-ended Combat Arms™ earplug, Plaintiff would not have used and/or relied on the Dual-ended Combat Arms™ earplug.

172.    That Defendant's aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly and/or purposefully on Plaintiff.

173.    As a result of the foregoing acts and omissions, Plaintiff was caused to sufferer serious and dangerous side effects including, sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

WHEREFORE, Plaintiff demands judgment against DEFENDANTS, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## **Tenth Cause of Action**
## **Punitive Damages**

174.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

175.    Defendant has acted willfully, wantonly, with an evil motive, and recklessly in one or more of the following ways:

a.   By failing to disclose material facts regarding the dangerous and serious safety concerns of Dual-ended Combat Arms™ earplug by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of Dual-ended Combat Arms™ earplug;

b.   By failing to disclose the truth and making false representations with the purpose and design of deceiving and lulling Plaintiffs, and others, so that they would use and rely upon the Dual-ended Combat Arms™ earplug;

c. By falsely representing the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms™ earplug to the public at large, and Plaintiff in particular.

WHEREFORE, Plaintiff demands judgment against DEFENDANTS, and each of them individually, jointly, severally and in the alternative, requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## VI.   TIMELINESS AND TOLLING OF STATUTES OF LIMITATIONS

175.   Plaintiff filed this lawsuit within the applicable limitations period of first suspecting that the Dual-ended Combat Arms™ earplugs caused his injuries.  Plaintiff could not, by the exercise of reasonable diligence, have discovered the wrongful cause of the Dual-ended Combat Arms™ earplugs-induced injuries at an earlier time, because, at the time of these injuries, the cause was unknown to Plaintiff.  Plaintiff did not suspect, nor did Plaintiff have reason to suspect, the cause of these injuries, or the tortious nature of the conduct causing these injuries, until less than the applicable limitations period prior to the filing of this action.

176.   Furthermore, the running of any statute of limitations has been tolled by reason of Defendant's fraudulent concealment.   Through their affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiff the risks associated with the defects in the Dual-ended Combat Arms™ earplugs.

177.   As a result of Defendant's actions, Plaintiff was unaware, and could not reasonably know or have learned through reasonable diligence that the Plaintiff had been exposed to the defects and risks alleged herein, and that those defects and risks were the direct and proximate result of Defendants' acts and omissions.

178.   Through Defendant's affirmative misrepresentations and omissions pertaining to the safety and efficacy of the Dual-ended Combat Arms™ earplugs, Plaintiff was prevented from discovering this information sooner because Defendant herein misrepresented and continued to misrepresent the defective nature of the Dual-ended Combat Arms™ earplugs.

179. Additionally, pursuant to the Servicemembers Civil Relief Act, the period of Plaintiff's military service may not be included in computing any statute of limitations applicable herein. *See* 50 U.S.C. § 3936.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment against DEFENDANTS and each of them as follows:

1. For general damages according to proof;

2. For medical and related expenses according to proof;

3. For loss of income according to proof;

4. For punitive damages according to proof;

5. For Plaintiffs' costs of suit herein; and

6. For such other and further relief as this Court deems just and proper, including prejudgement interest.

Dated: December 21, 2018                    Respectfully submitted,

Michael Akselrud (SBN 285033)
THE LANIER LAW FIRM, PC
21550 Oxnard Street, 3rd Floor
Woodland Hills, CA 91367
Telephone: (310) 277-5100
Facsimile: (310) 277-5103
Michael.Akselrud@lanierlawfirm.com

1   **<u>DEMAND FOR JURY TRIAL</u>**

2   Plaintiffs hereby demand a jury trial on all claims so triable in this action.

3

4   Dated:  December 21, 2018                    Respectfully submitted,

5

6                                               Michael Akselrud (SBN 285033)
                                                THE LANIER LAW FIRM, PC
7                                               21550 Oxnard Street, 3rd Floor
                                                Woodland Hills, CA 91367
8                                               Telephone: (310) 277-5100
                                                Facsimile: (310) 277-5103
9                                               Michael.Akselrud@lanierlawfirm.com

10                                              *Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28