BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTI-DISTRICT LITIGATION

| | |
|---|---|
| In re: | : |
| | : |
| 3M COMBAT ARMS EARPLUG | :  MDL No. 2885 |
| PRODUCTS LIABILITY LITIGATION | : |
| | : |
| | : |

**INTERESTED PARTY RESPONSE IN PARTIAL OPPOSITION TO THE MOTION FOR TRANSFER AND CONSOLIDATION OF THE RELATED ACTIONS TO THE DISTRICT OF MINNESOTA, AND SUPPORTING TRANSFER AND <u>CENTRALIZATION TO THE EASTERN DISTRICT OF PENNSYLVANIA</u>**

**<u>INTRODUCTION</u>**

Plaintiff, Gene Dal Porto ("Movant) submits this opposition to the Motion to Transfer (Dkt. No. 1) to the United States District Court for the District of Minnesota ("District of Minnesota") and instead, respectfully moves this Judicial Panel on Multi-District Litigation ("Panel") for an Order pursuant to 29 U.S.C. § 1407 for consolidation pre-trial proceedings to the United States District Court for the Eastern District of Pennsylvania.  While Plaintiff agrees the related actions identified to date and all future related action (the "Actions") should be consolidated and transferred, the Panel should transfer these cases to the Eastern District of Pennsylvania as well as any tag-along cases subsequently filed involving similar facts or claims for coordinated or consolidated proceedings before the Honorable Chief Judge Juan Sanchez, or, Honorable Mitchell S. Goldberg, or Honorable J. Curtis Joyner.

The Actions in this product liability litigation arise out defective nature of the dual-ended 3M Combat Arms™ Earplugs that were designed, tested, manufactured, and sold by 3M Company ("3M") and Aearo Technologies, LLC (Aearo).  The American Soldiers in these cases allege to have suffered hearing loss and/or tinnitus as a result of their usage of these 3M dual-ended earplugs; that 3M/Aearo knew the earplugs were defective because they falsified the testing results

1

to get the necessary resulted to qualify for exclusive and Indefinite Quantity Contracts with the United States worth millions of dollars each year; that 3M/Aearo knew the earplugs would not perform appropriately if used as directed and that 3M/Aearo failed to give proper warnings about the defects.  As a result, thousands of soldiers now suffer from hearing loss and/or tinnitus.

The government started purchasing the dual-ended Combat Arms Earplugs in 2003, and 3M/Aearo was the exclusive supplier of these earplugs to the military until around 2012.  After 2012, 3M/Aearo continued to supply the dual-ended Combat Arms Earplugs to the military until late 2015, at which time Defendants discontinued selling the earplugs.  Also, important to note, these dual-ended earplugs were not exclusively used by only the United States military.  3M/Aearo also made these earplugs commercially available for purchase through various retailers in the United States.  Therefore, hundreds of thousands of soldiers and civilians are estimated to have used these dual-ended 3M Combat Arms Earplugs.

Currently, there are over one hundred seventy (170) Actions that have been filed in various district courts across the United States.  Plaintiff expects the number of filed cases to continue to increase over the coming weeks, given the size of the population of potential users of this product and the significant number of servicemen and women with hearing damage.

As of February 18, 2019, in addition to Movant's lawsuit, Feldman Pinto, Tracey and Fox have filed suit against 3M and Aearo (together "Defendants") on behalf of the following plaintiffs: Robert Stasio (Cause No. 2:19-CV-00663); James Richardson (Cause N. 2:19-CV-00662; and Charles Dorner (Cause No. 2:19-CV-00661).  Tracey & Fox represents several thousand other veterans with injuries similar to Plaintiff's of hearing loss and/or tinnitus.

As set forth below, Plaintiff supports consolidation and transfer of all related and/or tag-along actions because of common allegations and questions of fact involved, and the need to

eliminate duplication and ensure uniform and consistent resulted in the pretrial proceedings. Plaintiff, however, disagrees with the initial motion's proposed venue of the District of Minnesota. Instead, Plaintiffs propose that the cases should be transferred and consolidated in the Eastern District of Pennsylvania. The Eastern District of Pennsylvania is the most appropriate district for the Actions because the factors considered by the Panel way in favor of that district, as set forth below:

## LEGAL STANDARD

Under 28 U.S.C. § 1407, actions that include common questions of fact "may be transferred to any district" and consolidated if the JPML determines that such transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." "The objective or transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." See Manual of Complex Litigation (Fourth) § 20.131 (2004) (citing *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (U.S. Jud. Pan. Mult. Lit. 1968)). Each of these factors favors transfer and consolidation of the Action filed against Defendants.

## ARGUMENT

A. **The Actions Satisfy the Requirements for Consolidation and Transfer Under 28 U.S.C. § 1407.**

Pretrial transfer and consolidation under section 1407 is appropriate and necessary here. The Actions involve similar factual allegations and legal standards. Unless these cases are consolidated, the parties will incur excessive costs due to duplicative discovery and will face the risk of inconsistent rulings on a variety of matters.

   i.   *The Actions Involves Common Questions of Fact.*

In assessing the appropriateness of consolidation under Section 1407, the Panel looks to the pleadings to determine the extent to which common questions of fact are present. The Actions clearly present common questions of fact. Each Action is based on allegations that Defendants made false representations and knowingly sold to the U.S. Government defective dual-ended Combat Arms earplugs; that veterans exclusively used those earplugs, causing them to suffer hearing loss and/or tinnitus; and that Defendants did not provide proper instructions to cure the defect. The factual assertions that Plaintiffs allege in relation to Defendants' actions in each of the Actions are nearly identical. Furthermore, Plaintiffs all allege similar legal theories such as design defect, failure to warn, breach of warranty, misrepresentation and fraud. Therefore, the legal issues in dispute will also be nearly identical, thus transfer and coordination or consolidation of these actions is extremely appropriate. *See In Re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales, Practices, and Products Liab. Litig.*, 704 F. Supp. 2d 1379, 1381 (J.P.M.L. 2010) (finding "factual questions arising from an alleged defect" warrant centralization).

        ii.        ***The Parties Face Duplicative Discovery Absent Transfer and Consolidation.***

Because the allegations of all the cases are substantially similar and derive from the same false misrepresentations, and because they all turn on the same factual question, namely issues related to Defendants' testing of and warnings about the dual-ended Combat earplugs, the parties face duplicative discovery if the cases are not transferred and consolidated. This is an important consideration for the Panel in that transfer and consolidation "ensure[s] that the actions are supervised by a single judge who, from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery . . . and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *Resource Exploration Inc. Sec. Litig.*, 483 F. Supp. 817, 821 (U.S. Jud. Pan. Mult. Lit. 1980).

The parties in these actions will necessarily engage in duplicative discovery. All Plaintiffs will be seeking the same documentation from Defendants and will likely request to depose the same witnesses. Defendants will raise the same objections and discovery objections, seek the same protective orders, and assert the same privileges in each case. However, if the Panel transfers and consolidates the cases, the parties will coordinate their efforts and thus save all parties -- and the courts -- time and money.

### iii. Transfer and Consolidation Will Prevent Inconsistent Pretrial Rulings.

The Panel considers the possibility of inconsistent rulings on pretrial issues because of the possible res judicata or collateral estoppel effects on other cases. *See In re Enron Securities Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (U.S. Jud. Pan. Mult. Lit. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification). Because of the similarity of the allegations in the Actions, and the likelihood that future filed actions will contain the same, the possibility of inconsistent rulings on pretrial motions is substantially increased. Defendants are likely to present the same pretrial motions in each action and assert the same discovery objections and privileges. As an example, Plaintiffs anticipate that Defendants will file motions to dismiss and for summary judgment. Inconsistent rulings on those dispositive motions would pose a serious problem. In addition, because of the similarity in the allegations, Defendants will assert the same defenses in opposition to Plaintiffs' claims, creating a real risk of inconsistent pretrial rulings. In light of this risk, it would be in the best interests of all involved -- the parties, the witnesses and the Courts -- to transfer and centralize these actions.

### iv. There is a Sufficient Number of Actions to Support Transfer and Centralization.

As stated above, there are currently almost one-hundred actions pending in federal court and Plaintiffs believe that many more will follow. As discussed previously, since Defendants were one of the exclusive suppliers of earplugs to the U.S. Government, and made false representations and knowingly sold to the U.S. Government defective dual-ended Combat Arms earplugs; that veterans exclusively used those earplugs, causing them to suffer hearing loss and/or tinnitus; and that Defendants did not provide proper instructions to cure the defect, that hundreds of thousands of veterans were affected and therefore numerous tag-along actions will likely be filed against Defendants in federal courts around the country. The Panel has routinely ordered centralization of three or fewer cases. *See In re Wireless Telephone Replacement Protection Programs Litig.*, 180 F. Supp. 2d 1381, 1382 (U.S. Jud. Pan. Mult. Lit. 2002) (granting transfer and centralization of three consumer protection cases and determining that pending motions can be presented to and decided by the transferee judge); *In re Philadelphia Life Ins. Co. Sales Practices Litig.*, 149 F. Supp. 2d 937, 938 (U.S. Jud. Pan. Mult. Lit. 2001) (granting transfer of two deceptive insurance sales cases and finding that such transfer would promote the just and efficient conduct of the litigation); *In re Amoxicillin Patent & Antitrust Litig.*, 449 F. Supp. 601, 603 (U.S. Jud. Pan. Mult. Lit. 1978) (granting transfer of three cases involving patent and antitrust issues); *In re Alodex Corp.*, 380 F. Supp. 790, 791 (U.S. Jud. Pan. Mult. Lit. 1974) (granting transfer of three securities actions). Given the number of current and likely tag-along actions related to Defendants' systematic, widespread activities, transfer and centralization is appropriate.

**B.     The Eastern District of Pennsylvania Is the Appropriate Transferee Forum**

The United States District Court for the Eastern District of Pennsylvania is the most appropriate venue for centralizing the Actions for numerous reasons. First, there are already multiple Actions filed in this district. Second, Pennsylvania, and specifically, the Eastern

District, has a strong nexus to the claims alleged in these Actions.  Specifically, Defendants entered into indefinite supply contracts with the Defense Supply Center Philadelphia Directorate of Medical Material and the Defense Logistics Agency Defense Supply Center, both located in Philadelphia, specific to the dual-ended Combat Arms™ Earplugs.  As a result of representations made and delivered by Defendants into Pennsylvania, Defendants entered a supply contract for the dual-ended Combat Arms™ Earplugs issued from the Defense Supply Center Philadelphia.

The dual-ended Combat Arms™ Earplugs distributed to Plaintiff were purchased pursuant to this Pennsylvania-based contract, or subsequent amendments thereto.  It is Plaintiff's understanding that all procurement contracts were entered into in Philadelphia from all times relevant to the use of the dual-ended Combat Arms™ Earplugs by the United State military.  This contract contained a warranty clause which provided "the ear plugs shall be free from all defects that detract for their appearance or impair their serviceability." As third-party beneficiaries of this contract, the Plaintiffs harmed by these defective earplugs are entitled to assert these warranty claims under the Uniform Commercial Code or similar mechanism for cause of action for warranty and fitness for a particular purpose.

Next, Philadelphia is a major metropolitan city and is a convenient location for this litigation that is easily accessible from anywhere in the United States.  Plaintiffs and their attorneys are located coast-to-coast, so this Panel should select a location that provide convenient access to the entire country.

Lastly, and most importantly, the Eastern District of Pennsylvania has a wealth of MDL experience, as the Panel has centralized major Multi-District Litigation time and time again: MDL 875 In Re: Asbestos Products Liability (No. VI); MDL 1203 In re: Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation; MDL 1871

Avandia Marketing, Sales Practices and Products Liability Litigation; MDL 2002 In Re: Processed Egg Products Antitrust Litigation; MDL 2323 In re: National Football League Player's Concussion Injury Litigation; MDL 2342 In re: Zoloft Products Liability Litigation; MDL 2436 In Re: Tylenol (Acetaminophen) Marketing, Sales Practices and Products Liability Litigation; MDL 2437 In Re: Domestic Drywall Antitrust Litigation; MDL 2724 In Re: Generic Pharmaceuticals Pricing Antitrust Litigation.

## CONCLUSION

Based on the forgoing, Plaintiffs respectfully request that the Panel transfer *In re: 3M Combat Arms Earplug Products Liability Litigation* to the Honorable Chief Judge Juan Sanchez, or, Honorable Mitchell S. Goldberg, or Honorable J. Curtis Joyner.  Alternatively, this Plaintiff believes that the District of Minnesota is the next most appropriate forum for this consolidation.

**FELDMAN PINTO**

Dated:  February 19, 2019

*/s/ Rosemary Pinto*
Rosemary Pinto, Esq.
Pa. Bar No. 53114
**FELDMAN & PINTO**
1604 Locus St, FL 2R
Philadelphia, PA 19103
(215) 546-4385 Telephone
RPinto@feldmanpinto.com


*/s/ Sean Patrick Tracey*
Sean Patrick Tracey
Texas State Bar No. 20176500
Shawn P. Fox
Pa. State Bar No. 210350
Texas State Bar No. 24040926
Rebecca King
Texas State Bar No. 24027110

8

Clinton Casperson
Texas State Bar No. 24075561
**TRACEY & FOX**
440 Louisiana, Ste. 1901
Houston, Texas 77002
Telephone: (713) 495-2333
Facsimile: (713) 495-2331
Email: stracey@traceylawfirm.com
 sfox@traceylawfirm.com
 rking@traceylawfirm.com
 ccasperson@traceylawfirm.com

**ATTORNEYS FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing pleadings upon all counsel of record, by electronic transmission or United States mail, properly addressed and first class postage prepaid on this 19th day of February, 2019.

*/s/ Sean Patrick Tracey*

SEAN PATRICK TRACEY