BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re 3M Combat Arms Earplug Products Liability Litigation<br><br>*Graves v. 3M Co.*, Case No. 19-CV-3094-JRT-KMM (D. Minn.) | MDL No. 2885<br><br>**BRIEF IN SUPPORT OF CORRECTED MOTION TO VACATE CONDITIONAL TRANSFER ORDER 46 WITH RESPECT TO *GRAVES V. 3M CO.*** |

## BRIEF IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER 46 WITH RESPECT TO *GRAVES V. 3M CO.*

3M Company ("3M") reflexively removed Christopher Graves's civilian, state-law failure-to-warn action from Minnesota state court to federal court with the expectation that it would end up in MDL No. 2885, *3M Combat Arms Earplug Products Liability Litigation*. But, contrary to 3M's notice of removal, Mr. Graves's action differs from other cases in the MDL in two dispositive respects. First, he is a civilian, not a soldier; and, second, he asserts only a state-law failure-to-warn claim, not a design defect or any other claim. As a consequence, Mr. Graves's case is unique. Federal jurisdiction in this case depends on different facts than other MDL cases. Ultimately, the merits of Mr. Graves's case raise different factual issues than the MDL was tasked to resolve. In combination, these two differences between Mr. Graves's case and others in the MDL make transfer inappropriate, and Mr. Graves moves the Judicial Panel on

1833774.5

Multidistrict Litigation ("Panel") to vacate CTO–46 with respect to his case, *Graves v. 3M Co.*, No. 19-CV-3094 (D. Minn. 2019).[1]

In the alternative, Mr. Graves moves the Panel to stay its decision on this motion to vacate until the transferor court, the District of Minnesota, resolves his pending motion to remand. Allowing the District of Minnesota to resolve the pending motion to remand prior to transfer would serve judicial economy and the convenience of the parties.

## BACKGROUND AND PROCEDURAL HISTORY

Mr. Graves bought 3M's[2] Combat Arms™ version 2 earplugs to wear at his job running the Collins, Mississippi Police Department firing range and leading firearms training of fellow police officers. *Graves*, No. 19-CV-3094, Doc. 1-1 at ¶¶ 8, 10–11. He has never served in the military. *Id.* ¶ 9. This is an image of the earplugs:



---

[1] This motion concerns only *Graves v. 3M Co.*, No. 19-CV-3094. Per J.P.M.L. Rule 6.1(b)(ii), the schedule attached hereto as Exhibit 1 reflects only the name of this action.

[2] 3M acquired Aearo Technologies, LLC, so 3M refers to both defendants in this background. *Graves*, No. 19-CV-3094, Doc. 1-1 (Compl.) ¶ 14.

1833774.5

The double-ended earplugs did not offer any hearing protection unless the wearer inserted them in a particular way. *Id.* ¶¶ 18–19, 26–30. Wearers had to fold back the third flange of the non-inserted end or else the earplug would imperceptibly loosen in the wearer's ear, which, in turn, kept the earplugs from blocking damaging sounds. *Id.* ¶¶ 26–30. 3M discovered this issue and the fold-back solution during testing. *Id.* ¶¶ 19, 26–29. Mr. Graves was not warned of the danger of using the earplugs without inserting them properly. *Id.* ¶ 12. As a result, he now suffers from hearing loss and tinnitus. *Id.* ¶ 13.

Mr. Graves sued 3M and Aearo Technologies, LLC, (collectively, "Defendants") in Minnesota state court for failing to warn him of the danger of using the earplugs improperly. *Id.* ¶¶ 1, 42–56. Unlike other cases in the MDL, he does not assert a design defect claim in his complaint. *See generally id.* He does not assert any claim arising under the Constitution, law, or treaties of the United States. *Id.* ¶ 3. And 3M is a citizen of Minnesota. *Id.* ¶ 6. These facts ordinarily defeat removal and any assertion of federal jurisdiction. *See* 28 U.S.C. § 1441(b)(2); *Markham v. Wertin*, 861 F.3d 748, 754 (8th Cir. 2017).

Nonetheless, 3M removed to federal court with Aearo's consent on December 16, 2019. *Graves*, No. 19-CV-3094, Doc. 1 (Notice of Removal) at 1 & n.1 (attached hereto as Exhibit 2). Incorrectly stating that Mr. Graves alleged a design defect claim, 3M asserted that the Minnesota federal court has subject matter jurisdiction over the action

1833774.5

to decide its asserted government contractor defense. *Id.* at 1–2. Two days later, the Clerk of the Panel entered Conditional Transfer Order 46 ("CTO–46"), which conditionally transferred Mr. Graves's case to the MDL in the Northern District of Florida. Doc. 638. Mr. Graves timely filed a notice of opposition to CTO–46. Doc. 642.

The same day the Clerk entered CTO–46, December 18, 2019, Mr. Graves moved to remand his case to Minnesota state court because 3M's notice of removal did not establish federal subject matter jurisdiction. *Graves*, No. 19-CV-3094, Docs. 11, 13 at 2. Mr. Graves also moved for an expedited briefing schedule to facilitate a prompt remand to state court. *Graves*, No. 19-CV-3094, Docs. 6, 7.

Apparently recognizing the deficiency of its initial notice of removal, 3M then filed an amended notice of removal the very next day, December 19, 2019. *Graves*, No. 19-CV-3094, Doc. 18 (attached hereto as Exhibit 3). Defendants also moved to stay the proceedings pending transfer to the MDL and opposed expediting the briefing schedule. *Graves*, No. 19-CV-3094, Doc. 19.

On December 20, 2019, the District of Minnesota denied Mr. Graves's proposed expedited briefing schedule without prejudice to consideration of a different expedited schedule. *Graves*, No. 19-CV-3094, Doc. 26. Mr. Graves filed an amended motion to

remand and expedite out of an abundance of caution.  *Graves*, No. 19-CV-3094, Doc. 27.[3] On January 2, 2020, the District of Minnesota had a teleconference with counsel for the parties to discuss the possible options to resolve the pending motions, including to expedite the remand briefing, to stay pending transfer, and to remand.  Subsequently, on January 9, 2020, the case was reassigned to Chief Judge Tunheim, who was the District Judge assigned to earplug-related cases in Minnesota prior to creation of the MDL.  *Graves*, No. 19-CV-3094, Doc. 38.

Mr. Graves now moves the Panel to vacate CTO–46 with respect to his case.

## **ARGUMENT**

The Panel should vacate CTO–46 with respect to Mr. Graves's case and can do so for two independent reasons.  First, because Mr. Graves's complaint asserts only a civilian, state-law failure-to-warn claim, the case presents a unique set of merits issues such that transfer will not serve the convenience of the parties or promote the just and efficient conduct of this litigation.  Second, federal subject matter jurisdiction in this case also depends on a unique set of facts.  This uniqueness makes the motion unsuited to transfer.

In the alternative, the Panel should stay decision on this motion to vacate until the District of Minnesota rules on Mr. Graves's motion to remand or stays the case

---

[3] Mr. Graves filed an amended motion to remand and expedite to assure that the relief he sought was not mooted by 3M's amended notice of removal.  His substantive arguments did not change.  *See Graves*, No. 19-CV-3094, Doc. 27 at 1.

1833774.5

5

pending transfer. Staying resolution of this motion will conserve judicial resources by giving the District of Minnesota time to resolve this unique motion, rather than requiring the MDL court to familiarize itself with the unique set of issues presented by Mr. Graves's motion to remand in addition to handling the many other MDL cases.

## I.     Mr. Graves's Action Does Not Belong in the MDL.

Mr. Graves's civilian, state-law failure-to-warn case will involve factual issues different than those the MDL was tasked to resolve. As a result, transfer will not serve the convenience of the parties or promote the just and efficient conduct of this litigation. With these factors absent, transfer is not warranted. *See In re Ameriquest Mortg. Co. Mortg. Lending Pracs. Litig.*, 542 F. Supp. 2d 1357, 1358 (J.P.M.L. 2008) (vacating conditional transfer orders where transfer "would not necessarily serve the convenience of the parties . . . or further the just and efficient conduct of this litigation").

Unique among other MDL cases, Mr. Graves raises only a single, civilian, state-law failure-to-warn claim. Counsel for 3M conceded at the January 2, 2020 hearing in the District of Minnesota that it knows of no other case in the entire MDL that only asserts a state-law failure-to-warn claim. *Graves*, No. 19-CV-3094, Doc. 37 at 7:7–10. This sets Mr. Graves's complaint apart from the actions the J.P.M.L. originally consolidated in the MDL, all of which "involve common factual questions arising out of allegations that defendants' Combat Arms earplugs were defective." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 366 F. Supp. 3d 1368, 1369 (J.P.M.L. 2019). The J.P.M.L.

1833774.5

noted other common issues "concerning the design, testing, sale, and marketing of" the earplugs. *Id.* Mr. Graves does not allege Defendants' earplugs were defectively designed. *See generally Graves*, No. 19-CV-3094, Doc. 1-1 (Compl.). Quite the contrary— he alleges he would not have been injured if he had received proper warnings, *id.* ¶ 56, which presupposes that the earplugs would have worked had Mr. Graves received adequate warnings on improper use. His case does not share one of the key factual issues the Panel identified in its consolidation order.

Minnesota law distinguishes design defect claims from failure-to-warn claims in a way that makes clear the unsuitability of Mr. Graves's case for transfer. To state the obvious, a different standard governs design defect claims than failure-to-warn claims. *Compare Holm v. Sponco Mfg., Inc.*, 324 N.W.2d 207, 212 (Minn. 1982) (setting the design defect standard), *with Gray v. Badger Min. Corp.*, 676 N.W.2d 268, 274 (Minn. 1982) (stating the failure-to-warn standard). Consequently, a plaintiff must prove a different set of facts to prevail on a failure-to-warn claim than a design defect claim. And a failure-to-warn claim may succeed where a design defect claim would not.

> Even though a product *may not be defectively designed* so as to be dangerous to one who properly uses it, a duty to warn may exist if a manufacturer has reason to believe a user or operator of it might so use it as to increase the risk of injury, particularly if the manufacturer has no reason to believe that users will comprehend the risk.

*Kallio v. Ford Motor Co.*, 407 N.W.2d 92, 99 (Minn. 1987) (emphasis added).

This perfectly describes Mr. Graves's case.  He asserts appropriate warnings would have prevented his injury, not that the earplug design was defective.  The resolution of questions relating to the defective design of Defendants' earplugs—the core common factual issue the J.P.M.L. identified, *see In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 366 F. Supp. 3d at 1369—will have limited, if any, bearing on Mr. Graves's case.  Indeed, time spent resolving design-related factual disputes in other cases will only prolong the time it takes Mr. Graves to seek relief on his claim.

It follows from this same distinction that Defendants will have to establish a different federal defense in Mr. Graves's action to establish federal jurisdiction at the threshold.  3M removed Mr. Graves's action under the federal officer removal statute, 28 U.S.C. § 1442, which "grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction."  *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012).  The statute allows private defendants to invoke federal jurisdiction and remove if, among other things, the private defendant has a "colorable federal defense" to the plaintiff's claims.  *Id.*  3M asserts the government contractor defense.  *See Graves*, No. 19-CV-3094, Docs. 1, 18.  Establishing this defense in a civilian, state-law failure-to-warn case will require a different showing than it would in a design defect case.  "It is," after all, "well established . . . that a defendant may not defeat a state failure-to-warn claim simply by establishing the

elements of the government contractor defense with respect to a plaintiff's design defect claim." *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003 (7th Cir. 1996) (collecting cases).

3M's conduct to date in the District of Minnesota illustrates that this case will involve unique issues for its defense. 3M initially filed a stock notice of removal in Mr. Graves's action, nearly the same as it has filed in several other actions, asserting the military specified the design of its earplugs. *See Graves*, No. 19-CV-3094, Doc. 1. After Mr. Graves filed a motion to remand pointing out that the military's specification of the design would not establish a colorable federal defense to a failure-to-warn claim, *see Graves*, No. 19-CV-3094, Docs. 11, 13, 3M filed an amended notice of removal purporting to address that motion, *see Graves*, No. 19-CV-3094, Doc. 18. By amending its notice of removal, 3M implicitly acknowledged that federal jurisdiction in this case depends on different facts than other cases in the MDL.

But 3M's new notice of removal no more establishes federal jurisdiction than the first. It misses another important factual distinction between this case and others in the MDL: it involves a civilian plaintiff. 3M's new notice stresses that the military dictated what instructions to give military service members. *See Graves*, No. 19-CV-3094, Doc. 18 at 5, 9, 11. But even if that is true, that allegation does not establish a colorable government contractor defense (and thus a basis for federal subject matter jurisdiction) in a *civilian* case. To establish a government contractor defense, a defendant must show a "significant conflict" between the defendant's obligations under state tort law and the

1833774.5

9

defendant's obligations under a government contract.  *Boyle v. United Techs. Corp.*, 487 U.S. 500, 507 (1988).  The fact that the government told 3M what instructions to give service members would not mean 3M's state law tort duties to warn *civilian end users* conflicted with its obligations under the contract.  Put differently, so far as 3M's notice of removal shows, it could both have warned Mr. Graves in accordance with Minnesota law and complied with the terms of its government contract to instruct service members on the use of its product.  This further distinguishes Mr. Graves's case from others in the MDL, where jurisdiction will turn on whether 3M has a colorable federal defense to a design defect claim because, so far as the parties are aware, Mr. Graves alone alleges a civilian, failure-to-warn claim.  *Graves*, No. 19-CV-3094, Doc. 37 at 7:7–10.

Given these important factual differences from the cases involved in the MDL, transferring this case will not serve the convenience of the parties or the just and efficient conduct of this litigation.  This case involves only a single claim that is both (1) different than the claims the J.P.M.L. created the MDL to resolve and (2) different in terms of the jurisdictional analysis.  The Master Complaint filed in the Northern District of Florida features sixteen different claims, only two of which involve Defendants' failure to warn.  *See In re 3M Co.*, No. 19-md-2885, Doc. 704 (N.D. Fla. Sept. 20, 2019).  For example, the complaint alleges three fraud-related claims based in part on manipulations in the testing of the earplugs, which will involve significant discovery into Defendants' intent and the propriety of 3M's testing.  *Id.* ¶¶ 371–416.  Mr. Graves's

1833774.5

10

case would not be advanced by this discovery. Thus, transferring this case will delay Mr. Graves's case and subject him to pretrial proceedings that will be of limited, if any, relevance to his one claim. Further, the fact that the Master Complaint alleges failure-to-warn claims does not mean jurisdiction will work the same way in this case as in the cases currently in the MDL. If 3M establishes federal subject matter jurisdiction over design defect claims, then federal courts may exercise supplemental jurisdiction over other, related claims, which might include failure-to-warn claims. *See* 28 U.S.C. § 1367(a).[4] Because Mr. Graves asserts only a civilian, state-law failure-to-warn claim, 3M will have to establish a different basis for federal jurisdiction over that claim, which, as noted above, will require it to prove a different set of facts than in any other case in the MDL. For these reasons, no efficiency gain will result from transferring this unique action to the Northern District of Florida.

The Panel will not transfer when a case presents unique issues, as this case does. *See In re Ameriquest Mortg. Co. Mortg. Lending Pracs. Litig.*, 542 F. Supp. 2d at 1358. The Panel should follow this precedent here and vacate CTO–46 with respect to Mr. Graves's case.

---

[4] At the January 2nd status conference held in the District of Minnesota, counsel for 3M indicated that 3M would argue for supplemental jurisdiction over failure-to-warn claims in the MDL court if that court rules it has jurisdiction over design defect claims but not failure-to-warn claims. *Graves*, No. 19-CV-3094, Doc. 37 at 8:8–24.

1833774.5

## II. Vacating the Transfer Order with Respect to Mr. Graves's Case or Staying Decision Is Appropriate to Allow the District of Minnesota Time to Rule on Mr. Graves's Motion to Remand.

The District of Minnesota currently has pending before it Mr. Graves's motion to remand. *See Graves*, No. 19-CV-3094, Doc. 27. The motion shows the federal courts lack subject-matter jurisdiction over this action. *Id.* The District of Minnesota should have the opportunity to resolve this motion, which has been the subject of active litigation there, including a teleconference on January 2, 2020. The Panel should vacate CTO–46 with respect to Mr. Graves's case for this independent reason or, in the alternative, stay decision of this motion to vacate until the District of Minnesota resolves the pending motion to remand on the threshold issue of federal jurisdiction.

This Panel has a "policy of comity" toward transferor district courts under which it "has in the past timed its actions and constructed its orders in a manner which will permit the transferor courts . . . to reach timely decisions on particular issues without abrupt, disconcerting, untimely or inappropriate orders of transfer by the Panel." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 496 (J.P.M.L. 1968). To that point, the Panel rules specifically provide that transferor courts retain the power to decide pending motions before a case is transferred, J.P.M.L. R. 2.1(d), and the Panel has many times said transferor courts may rule before a case is transferred if they wish. *See In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 170 F. Supp. 2d 1346, 1347–48 (J.P.M.L. 2001). This policy makes sense. Judicial economy would not be served by a transferor court

undertaking to resolve a motion and expending time to do so just to have the Panel transfer the action before the transferor court rules. Accordingly, this Panel has denied centralization or vacated transfer orders when a transferor court has evinced its intent to resolve a pending, potentially dispositive motion. *See In re Droplets, Inc. Patent Litig.*, 908 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012) (denying centralization where "a potentially case-dispositive motion is pending and has been fully briefed"); *In re Accutane Prods. Liab. Litig.*, 560 F. Supp. 2d 1370, 1370 (J.P.M.L. 2008). In keeping with this practice, the Panel should allow the transferor court to resolve Mr. Graves's motion to remand before it transfers the case. Otherwise, the transferor court's efforts to bring about an orderly resolution of this motion by, for example, holding a conference on the case, would be lost.

Further, vacating a transfer order pending a ruling from the transferor court on the motion to remand would affirm the practice of transferor district courts around the country. As these courts recognize, "[m]otions to remand are particularly appropriate for resolution by [a transferor court] because if [the transferor court] does not have jurisdiction over th[e] matter, then neither will the MDL court." *Mayor & City Council of Baltimore v. Purdue Pharma L.P.*, No. GLR-18-800, 2018 WL 1963816, at *3 (D. Md. Apr. 25, 2018) (internal quotation marks omitted). Indeed, the Federal Judicial Center, the research arm of the judiciary, notes in the Manual for Complex Litigation that motions "to remand . . . may be particularly appropriate for resolution" before a case is

transferred. Manual for Complex Litigation, § 20.131 (4th ed. 2004). This Panel would affirm this practice by vacating CTO–46 with respect to Mr. Graves's case.

These principles counsel in favor of vacating CTO–46 with respect to Mr. Graves's case. Mr. Graves's motion to remand has been briefed. The deadline to respond to Mr. Graves's amended motion is coming on Monday, January 13. *See* D. Minn. R. 7.1(c). Mr. Graves will promptly reply. If 3M follows the schedule, the District of Minnesota will have before it a fully briefed, dispositive motion by next week. Its ruling on that motion will, Mr. Graves submits, obviate the need for transfer because the federal courts lack subject matter jurisdiction over his case, and remand is appropriate. *See Graves*, No. 19-CV-3094, Docs. 13, 27. Due to the uniqueness of Mr. Graves's case, the District of Minnesota is as well positioned to rule as is the Northern District of Florida. It makes sense to allow the District of Minnesota to rule on the threshold issue of federal jurisdiction before this case is transferred to the Northern District of Florida.

Mr. Graves acknowledges some Panel decisions holding that pending remand motions are not a sufficient basis to vacate a transfer order or stay transfer when the transferor court has adequate time to rule on the motion. *E.g., In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 170 F. Supp. 2d at 1347; *see also In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, MDL No. 1720, 2017 WL 4582708, at *1 & n.2 (J.P.M.L. Aug. 2, 2017). But those cases presume "a lag time of at least three or four

months" between the filing of an action and resolution of motion to vacate a conditional transfer order, which the Panel regards as sufficient time to resolve a remand motion. *E.g.*, *In re Prudential Ins. Co. of Am.*, 170 F. Supp. 2d at 1347.  In contrast to the timing of transfer in those cases, here, the District of Minnesota has not had even a month to rule. CTO–46 was entered on December 18, 2019—just two days after 3M removed the case. Mr. Graves promptly filed a motion to remand that same day, and since then the District of Minnesota appears to have been working to bring about a speedy but orderly resolution of the motion.  This Panel should not preempt those efforts by transfer when the court has not yet had sufficient time to rule.

Mr. Graves submits that transfer would not promote the just and efficient conduct of this litigation.  He requests the Panel vacate CTO–46 with respect to Mr. Graves's case.

In the alternative, and for much the same reasons, Mr. Graves moves the Panel to stay its decision until the District of Minnesota rules on the motion to remand.  Staying resolution of this motion to vacate would promote judicial economy and serve the convenience of the parties.  As noted, the District of Minnesota will have a fully briefed dispositive motion soon, and it is well positioned to resolve it given the unique issues the case raises.  The Panel should stay resolution of the motion to vacate to allow the District of Minnesota to rule.

1833774.5

## CONCLUSION

Mr. Graves's civilian, state-law failure-to-warn case presents unique issues. Those unique issues make transfer inappropriate, and they also counsel in favor of vacating CTO–46 with respect to Mr. Graves's case or staying decision on Mr. Graves's motion to vacate until resolution of his pending motion to remand by the District of Minnesota.

Respectfully submitted this 11th day of January, 2020.

>                                       /s/ Michael B. Terry
>                                       Michael B. Terry
>                                       Georgia Bar No. 702582
>                                       David G.H. Brackett
>                                       Georgia Bar No. 068353
>                                       Matthew R. Sellers
>                                       Georgia Bar No. 691202
>                                       BONDURANT, MIXSON &
>                                          ELMORE, LLP
>                                       3900 One Atlantic Center
>                                       1201 West Peachtree Street, N.W.
>                                       Atlanta, Georgia  30309
>                                       Telephone: (404) 881-4100
>                                       Facsimile: (404) 881-4111
>                                       *Terry@bmelaw.com*
>                                       *Brackett@bmelaw.com*
>                                       *Sellers@bmelaw.com*

| | |
|---|---|
| William R. Sieben (#100808) | Daniel Gustafson (#202241) |
| Alicia N. Sieben (#389640) | Amanda M. Williams (#341691) |
| Matthew J. Barber (#397240) | GUSTAFSON GLUEK PLLC |
| SCHWEBEL GOETZ & SIEBEN, P.A. | Canadian Pacific Plaza |
| 80 South Eighth Street | 5120 IDS Center |
| Minneapolis, Minnesota 55402-2246 | 120 South Sixth Street, Suite 2600 |
| Telephone: (612) 377-7777 | Minneapolis, MN 55402 |
| Facsimile: (612) 333-6311 | Telephone: (612) 333-8844 |
| *BSieben@schwebel.com* | Facsimile: (612) 339-6622 |
| *MSieben@schwebel.com* | *DGustafson@gustafsongluek.com* |
| *MBarber@schwebel.com* | *AWilliams@gustafsongluek.com* |

***ATTORNEYS FOR PLAINTIFF CHRISTOPHER GRAVES***

1833774.5